UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SNOWBRIDGE ADVISORS LLC and SNOWBRIDGE SECURITIES LLC, | Case No.: |
| Plaintiffs, | |
| -against- | |
| ESO CAPITAL PARTNERS UK LLP, SOHO SQUARE CAPITAL LLP f/k/a ESO CAPITAL ADVISORS LLP f/k/a CORE CAPITAL PARTNERS LLP, ALEXANDER SCHMID, WALID FAKHRY, and STEPHEN EDWARDS, | **COMPLAINT** |
| Defendants. | |

Plaintiffs SNOWBRIDGE ADVISORS LLC and SNOWBRIDGE SECURITIES LLC (together, "Snowbridge"), by their undersigned attorneys BARTON LLP, as and for their Complaint against defendants ESO CAPITAL PARTNERS UK LLP, SOHO SQUARE CAPITAL LLP f/k/a ESO CAPITAL ADVISORS LLP f/k/a CORE CAPITAL PARTNERS LLP, ALEXANDER SCHMID, WALID FAKHRY, and STEPHEN EDWARDS, allege as follows:

## INTRODUCTION

1.     Snowbridge, an independent advisory and placement firm, was engaged by a London-based investment advisory firm, ESO Partners (as defined below), to serve as its exclusive financial advisor worldwide and exclusive placement agent in North America in connection with the private placement of interests in a proposed investment fund. In order to ensure that it would be adequately compensated for its work in the event that the rosy projections proffered by ESO Partners and its principals for the fund did not pan out, Snowbridge negotiated a minimum placement fee, which ESO Partners agreed to in order to induce Snowbridge to accept

the engagement.   But when, as Snowbridge had feared, ESO Partners failed to gain the support

of its existing investors, a prerequisite to raising the new fund, ESO Partners refused to pay the

negotiated minimum placement fee. Instead, ESO's principals transferred and assigned ESO

Partners' role as fund manager to an affiliated entity which they also controlled, in order to render

ESO Partners judgment proof. Snowbridge now brings this action for breach of contract against

ESO Partners and its affiliate as its successor, tortious interference with contract and unjust

enrichment against the principals and the affiliate, breach of duty to ESO Partners' creditors

against the principals, and declaratory judgment.

## THE PARTIES

2.      Plaintiff Snowbridge Advisors LLC ("Snowbridge Advisors") is a Delaware

limited liability company with its principal place of business at 747 Third Avenue, 17th Floor,

New York, New York 10017. All of Snowbridge Advisors' members are citizens of a state of the

United States.

3.      Plaintiff Snowbridge Securities LLC ("Snowbridge Securities") is a Delaware

limited liability company with its principal place of business at 747 Third Avenue, 17th Floor,

New York, New York 10017, and is a broker-dealer firm registered with the United States

Securities Exchange Commission ("SEC") and a member of the Financial Industry Regulatory

Authority ("FINRA"). All of Snowbridge Securities' members are citizens of a state of the United

States.

4.      Defendant ESO Capital Partners UK LLP ("ESO Partners") is a limited liability

partnership organized under the laws of England and Wales with its registered office address at 9

Percy Street, London, England W1T1DL, registered as an investment advisor with the SEC, and

a member of the "ESO Capital Group" of companies. All of ESO Partners' members are citizens

of foreign states and, upon information and belief, reside in the United Kingdom.

5.       Defendant Soho Square Capital LLP, which from around December 2020 until around October 2021 was known as ESO Capital Advisors LLP, and before that was known as Core Capital Partners LLP (referred to herein as "ESO Advisors") is a limited liability partnership organized under the laws of England and Wales with its registered office address at 9 Percy Street, London, England W1T1DL, registered as an investment advisor with the SEC, and is, or was at relevant times, a member of the ESO Capital Group.  All of ESO Advisors' members are citizens of foreign states and, upon information and belief, reside in the United Kingdom.

6.       Defendant Alexander Schmid ("Schmid") is the founding partner of ESO Partners and is, or was at relevant times, Chief Executive Officer ("CEO") of ESO Partners and a director and CEO of the ESO Capital Group. Schmid is a citizen of a foreign state residing, upon information and belief, in the United Kingdom.

7.       Defendant Walid Fakhry ("Fakhry") is a co-founder and managing partner of ESO Advisors and is, and or was at relevant times, a director of the ESO Capital Group and a managing partner of ESO Partners.  Fakhry is a citizen of a foreign state residing, upon information and belief, in the United Kingdom.

8.       Defendant Stephen Edwards ("Edwards") is a co-founder and managing partner of ESO Advisors and is, and or was at relevant times, a director of the ESO Capital Group and a managing partner of ESO Partners.  Edwards is a citizen of a foreign state residing, upon information and belief, in the United Kingdom.

### JURISDICTION AND VENUE

9.       This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because this action is between citizens of states of the United States and

citizens of foreign states, and the amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over defendant ESO Partners, because ESO Partners negotiated and entered into the subject Agreement with Snowbridge in New York; a substantial portion of the parties' performance of the Agreement took place in NewYork; ESO Partners expressly agreed, as set forth in the Agreement, to the exclusive jurisdiction of the federal and state courts located in New York County for any legal proceedings arising therefrom or relating thereto, and the Agreement is governed by New York law; ESO Partners has regularly conducted business in New York, including with respect to the Agreement; and ESO Partners has engaged in activities targeted to New York relating to the subject matters of this action and giving rise to plaintiffs' claims asserted herein.

11.     This Court has personal jurisdiction over defendant ESO Advisors, because it is a successor to ESO Partners with respect to the Agreement; has regularly conducted business in New York, including with respect to the Agreement; and has engaged in activities targeted to New York relating to the subject matters of this action and giving rise to plaintiffs' claims asserted herein.

12.     This Court has personal jurisdiction over defendant Schmid, because Schmid negotiated the Agreement with Snowbridge in New York; has regularly conducted business in New York, including with respect to the Agreement; and has engaged in activities targeted to New York relating to the subject matters of this action and giving rise to plaintiffs' claims asserted herein.

13.     This Court has personal jurisdiction over defendant Fakhry, because Fakhry has regularly conducted business in New York, including with respect to the Agreement, and has engaged in activities targeted to New York relating to the subject matters of this action and giving rise to plaintiffs' claims asserted herein.

14.     This Court has personal jurisdiction over defendant Edwards, because he has regularly conducted business in New York, including with respect to the Agreement, and has engaged in activities targeted to New York relating to the subject matters of this action and giving rise to plaintiffs' claims asserted herein.

15.     Venue in this district is proper because ESO Partners expressly agreed, as set forth in the Agreement, to venue in New York County for any legal proceedings arising therefrom or relating thereto; plaintiffs' principal place of business was, during the relevant time period, located in this district and plaintiffs have suffered substantial harm in this district; and substantial events and activities giving rise to plaintiffs' claims occurred in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

16.     Snowbridge Advisors is an independent placement and advisory firm focused on fund formation, fundraising, and providing strategic financial advice to fund managers and sponsors. Snowbridge Advisors' partners have an average of 20 years' experience in capital raising, private equity, and asset management, and collectively have raised more than $100 billion of capital commitments for private equity funds.

17.     Snowbridge Advisors deals with non-publicly traded funds that are exempt from federal and state securities registration requirements, do not solicit retail investors or the general public,  and solicit sophisticated investors who are deemed accredited investors and qualified clients under applicable securities laws, including institutional investors such as insurance companies, university endowments, foundations, pension funds, investment advisors, and family offices.

18.     ESO Partners was founded by Schmid in or around 2006. ESO Partners is an investment management firm focused on small and medium-sized enterprises and real estate in

the United Kingdom and Northern Europe.

19.     Upon information and belief, in or around May 2018, ESO Partners acquired Core

Capital Partners LLP, a United Kingdom-based lower mid-market private equity fund founded in

2005  by Fakhry and Edwards. Following the acquisition, Fakhry and Edwards joined Schmid on

ESO Partners' management board, with Schmid remaining as CEO.

20.     In or around December 2020, Core Capital Partners LLP changed its name to ESO

Capital Advisors LLP ("ESO Advisors").

21.     Pursuant to a letter agreement dated October 1, 2018 (the "Agreement"), ESO

Partners  engaged Snowbridge Advisors and DCS Advisory LLC ("DCS Advisory"), a broker-

dealer firm, to serve as ESO Partners' exclusive financial advisor worldwide and exclusive

placement agent in North America in connection with the private placement of interests in the

proposed European Special Opportunities Fund VII and any parallel, feeder, or alternative

investment vehicles thereof (collectively, the "Fund") to be managed by ESO Partners. A true

copy of the Agreement (cited herein as "Agr.") is annexed hereto as Exhibit A.

22.     In September 2019, Snowbridge Advisors formed Snowbridge Securities and

transferred its securities transactions from DCS Advisory to Snowbridge Securities. On

September 12, 2019, DCS Advisory's rights and obligations under the Agreement were assigned

to and assumed by Snowbridge Securities. A true copy of the executed assignment is annexed to

the Agreement submitted as Exhibit A hereto.

23.     During the months preceding their execution of the Agreement, the parties engaged

in substantial discussions, negotiations of terms, and due diligence, including at a meeting held

on August 29, 2018 in New York attended by Schmid and Edwards.

24.     In order to induce Snowbridge Advisors to accept the engagement and enter into

the Agreement, thereby foregoing other lucrative opportunities, ESO Partners represented to Snowbridge  Advisors that it had the experience, expertise, reputation, and investment record to successfully manage and attract investors to the Fund. In particular, ESO Partners claimed that its prior investors would subscribe to the Fund for around €200 million and that other investors with which ESO Partners had existing relationships would invest an additional €100 million, and represented that it expected to conduct a €200 million first closing of the Fund early in the first quarter of 2019.

25.     Snowbridge Advisors was unwilling to accept the engagement and to enter into the Agreement with ESO Partners unless it was guaranteed a minimum fee for committing the time and resources required to conduct a private placement on behalf of the Fund, in order to protect itself in the event that ESO Partners' representations were not correct. Therefore, in order to induce Snowbridge Advisors to enter into the Agreement, ESO Partners agreed to pay a minimum placement fee of €3 million irrespective of the amount of funds raised.

### ***Relevant terms of the Agreement***

26.     The term of the Agreement began on October 1, 2018 and was to continue until the date of the final Closing of the Fund. *See* Agr., at p. 1. Upon information and belief, and owing to the terms of the Fund's limited partnership agreement, the final Closing of the Fund was held in December 2020.

27.     Under Section 1 of the Agreement, Snowbridge agreed to provide substantial advisory as well as placement services to ESO Partners with respect to the Fund "using commercially reasonable efforts," as follows:

> (i)     advice with respect to the form and structure of the Fund;
>
> (ii)   advice with respect to current market conditions;
>
> (iii)  advice with respect to the reports purchasers may expect to receive

and other terms and conditions that investors may desire;

(iv)   advice and assistance in the preparation, update and/or revision of offering and marketing materials for the Fund, including the confidential private placement memorandum of the Fund and any supplements thereto ... , a marketing presentation, summary brochure relating to the Fund and any updates or revisions to the same;

(v)   assistance with the due diligence process with investors;

(vi)   advice and assistance with preparing for and developing responses to information requests ... from prospective investors, and coordinating such information requests from prospective investors, including assistance to the Company in preparing for any on-site due diligence visits;

(vii)  identifying prospective investors, developing the marketing approach of the fund raising and providing advice and assistance with respect to the strategy and tactics for initiating discussions and negotiations with prospective purchasers; ... ;

(viii)   assisting the Company in the placement of the Securities with prospective purchasers and managing and arranging the procedure for such placement with prospective purchasers, including arranging and attending presentation meetings between prospective purchasers who have received offering materials and representatives of the Company and coordinating requests for additional information; and

(ix)   such other services in connection with the Placement as may be agreed upon from time to time by [Snowbridge and ESO Partners].

28.   Under Section 2(a) of the Agreement, ESO Partners agreed to compensate Snowbridge by paying an initial Work Fee, a monthly Advisory Fee, and a minimum Placement Fee, as follows:

(i)   a nonrefundable cash fee (the "Work Fee") of €300,000 payable upon execution of this Agreement. €100,000 of the Work Fee, to the extent actually paid to [Snowbridge], will be credited against the final installment(s) of the Placement Fee as defined below;

(ii)   a non-refundable monthly fee of €30,000 (the "Advisory Fee") payable monthly in advance commencing upon the execution of this Agreement and terminating upon the final Closing; provided that payment of the monthly Advisory Fee will terminate with immediate effect in the event that this Agreement is terminated prior to the final Closing. The Advisory Fee, to the extent actually paid to [Snowbridge], will be credited in full against the final payment(s) of the Placement Fee (as defined below); and

> (iii)   a cash fee (the "Placement Fee") equal to the greater of (a) the sum of (x) the management fee rate, subject to a floor of 0.875% on all accepted binding capital commitments, including commitments structured as separate accounts or fee-paying co-investments (together, "Commitments") to the Fund from Full Fee Eligible Investors (as defined below), plus (y) one half of the management fee rate, subject to a floor of 0.45%, on Commitments to the Fund from investors identified in Appendix A hereto (the "Appendix A Investors") or (b) €3 million.

29.     Under Section 2(b) of the Agreement, ESO Partners agreed to pay Snowbridge interest on the unpaid balance of the Placement Fee, "at an annual interest rate equal to the prime rate at the time of each payment plus four percent (4%), on a 365-day year."

30.     Under Section 2(d) of the Agreement, ESO Partners agreed to reimburse Snowbridge, "on a monthly basis, for its reasonable out-of-pocket expenses relating to its engagement, regardless of whether the transaction contemplated herein is consummated", subject to the parameters set forth in that section, with interest "accru[ing] at the prime rate plus 4% on any amount of such fees and expenses that remain unpaid after 30 days following their invoice."

31.     Under Section 2(e) of the Agreement, in the event of an early termination of the Fund for any reason, "it will in no way relieve [ESO Partners] of its obligation to pay [Snowbridge] the balance of any Placement Fee payable pursuant to this paragraph 2, plus accrued interest."

32.     Under Section 2(g) of the Agreement, either ESO Partners or Snowbridge could terminate the Agreement early for "Cause". With respect to Snowbridge, "Cause" for termination is defined as:

> (i) the failure by [Snowbridge] to perform in a material respect its obligations hereunder (ii) [Snowbridge] committed willful misconduct or gross negligence pertaining to the Placement; or (iii) the occurrence of a Disqualification Event regarding a [Snowbridge] Covered Person; provided, however, that [ESO Partners] shall first give [Snowbridge] reasonable prior written notice of [ESO Partners'] intent to terminate the engagement for Cause (such notice to specify in reasonable detail the facts alleged to give rise to [ESO Partners'] right to terminate for Cause (a "Cause Event")) and shall have provided [Snowbridge] a reasonable opportunity to cure such Cause Event.

33.     Further, under Section 7 of the Agreement, either ESO Partners or Snowbridge could "terminate the Agreement at any time by giving the other party at least 30 days['] prior written notice." In the event of any termination or expiration of the Agreement, "the provisions of [Sections] 2, 4, 5(f), 5(h), 6 (including Schedule I), 7, 8 (final sentence) 9, 10, 11, 12 and 13 ... shall survive".

34.     Under Section 12 of the Agreement, the "Agreement and all lawsuits, actions, disputes or proceedings of any kind arising out of or relating to the Agreement or the engagement thereunder shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law."

35.     Further, under Section 12 of the Agreement, ESO Partners and Snowbridge each agreed that any lawsuit or other proceeding to resolve any dispute arising under or relating to the Agreement would be brought exclusively in the federal or state courts located in New York, New York, as follows:

> [ESO Partners and Snowbridge] hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States District Courts located in the County of New York for any lawsuits, actions or other proceedings arising out of or relating to this Agreement ... [and] hereby irrevocably and unconditionally  waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States District Courts located in the County  of New York[.]

36.      Further, under Section 12 of the Agreement, the prevailing party in any such lawsuit or proceeding is entitled to recover its attorneys' fees and other costs and expenses incurred thereby from the non-prevailing party, as follows:

> The prevailing party in any suit, action or proceeding to enforce the terms of this Agreement shall be entitled to recover from the non-prevailing party all of the attorney fees and other costs and expenses the prevailing

party may incur in such suit, action or proceeding and in any subsequent suit to enforce a judgment. [ESO Partners and Snowbridge] agree that any right to trial by jury with respect to any lawsuit, claim or other proceeding arising out of or relating to this Agreement or the services to be rendered by Snowbridge hereunder is expressly and irrevocably waived.

37.    Under Section 13 of the Agreement, the "Agreement may not be amended or otherwise modified or waived except by an instrument in writing signed by" Snowbridge and ESO Partners.

38.    Further, as set forth in Section 13 of the Agreement, the parties expressly understood and agreed that ESO Partners' obligations under the Agreement are joint and several with the Fund, and, further that the Agreement is binding on "any successor or assign of any substantial portion of [ESO Partners'], the Fund's and [Snowbridge's] respective businesses and/or assets."

39.    Under Section 14 of the Agreement, ESO Partners agreed and assumed an express obligation to cause the Fund to be joined as an additional party to the Agreement as of the date of its initial Closing by executing the "Joinder to Engagement Letter" annexed as Exhibit III to the Agreement, as follows:

Notwithstanding any other provision of this Agreement, as of the date of the Initial Closing [ESO Partners] shall cause the Fund to become a party to this Agreement in the manner and form set forth in Exhibit III to this Agreement and [ESO Partners'] obligations hereunder shall become joint and several obligations of the Company and the Fund.

### *Snowbridge's Performance Under the Agreement*

40.    Snowbridge devoted substantial resources and the time of its senior team to providing advisory services to ESO Partners under the Agreement, identifying prospective investors for the Fund, and working to place investors in the Fund. Snowbridge performed all such services to the high standards consistent with its reputation in the private investment industry and

well beyond the "commercially reasonable efforts" standard required in Section 1 of the Agreement.

41.     Snowbridge's advisory services provided to ESO Partners went well beyond the customary scope of services contemplated in the Agreement. Surprisingly for an investment firm launching its seventh fund, ESO Partners lacked the resources to handle the information requests typical of prospective investors, requiring Snowbridge to draft responses to investor inquiries and virtually all investor correspondence. ESO Partners effectively outsourced to Snowbridge the internal functions typically performed by an investment firm and imposed extraordinary reporting demands, requiring substantial sales and project management resources from Snowbridge. ESO Partners repeatedly justified its unique demands by citing the €3 million minimum Placement Fee that Snowbridge was "guaranteed" to receive under the Agreement.

42.     ESO Advisors, the company which Fakhry and Edwards had founded and at that time was still known as Core Capital Partners LLP, was designated in ESO Partners' SEC regulatory filings as the Fund's Alternative Investment Fund Manager ("AIFM"), a role prescribed under then-applicable European Union law.

43.     On November 6, 2018, Schmid, Fakhry, and Edwards met in person with Snowbridge at its offices in New York to discuss marketing, feedback from investors, and other matters concerning the Fund and ESO Partners' engagement of Snowbridge.

44.     By the end of 2019, Snowbridge had approached more than 500 prospective investors on behalf of the Fund, and had arranged over 100 first-round meetings and follow-up meetings with prospective investors. Most of those investor meetings were attended in person  by one or more of Schmid, Fakhry, and Edwards, including more than two dozen such meetings held in New York. In addition, on November 8, 2018, ESO Partners held its investor annual general

meeting for all of its funds in New York, which each of Schmid, Fakhry, and Edwards attended.

45.     Unfortunately, ESO Partners' initial representations with which they induced Snowbridge to accept their engagement and enter into the Agreement proved to be inaccurate. Whereas ESO Partners had represented that it would hold a €200 million first Closing of the Fund early in the first quarter of 2019, the first Closing was held in June 2019 for only around €100 million against a €400 million target. Only two of ESO Partners' prior investors participated in the first Closing and, upon information and belief, none of ESO Partners' prior investors participated in any subsequent Closing.

46.     ESO Partners' failure to reach its first Closing target and the refusal of nearly all of its other existing investors to recommit to the Fund rendered the Fund unattractive to new investors, who generally make reference calls to prior investors as a major element of their due diligence. Further, the investment performance of ESO Partners' prior funds declined from late 2018 into early 2020. These and other factors relating to ESO Partners, which were beyond the control of Snowbridge and unrelated to Snowbridge's performance under the Agreement, turned off potential investors to the Fund, including European investors approached directly by ESO Partners which had been "carved out" from Snowbridge's assignment. As such, and despite Snowbridge's commitment of substantial time and resources to the project, it could not attract any new investors into the Fund.

47.     ESO Partners, Schmid, Fakhry, and Edwards were at all times aware and understood that Snowbridge was providing advisory and placement services and performing them to a high standard, and that the Fund's shortcomings were unrelated to Snowbridge's performance under the Agreement. At no time up through December 2020, when the final Closing was required to be held pursuant to the Fund's limited partnership agreement and the term of the Agreement

would therefore have ended, did ESO Partners provide notice to Snowbridge of its intent to terminate the Agreement for any reason or suggest to Snowbridge that there might be Cause for termination.

### *ESO Partners' Refusal to Pay Snowbridge, and Its Assignment of Management of the Fund to ESO Advisors*

48.     Upon executing the Agreement, ESO Partners paid Snowbridge the initial Work Fee of €300,000 due under Section 2(a)(i) of the Agreement, and began paying the monthly Advisory Fee of €30,000 pursuant to Section 2(a)(ii) of the Agreement. ESO Partners paid the Advisory Fee for 14 months, through November 2019, but ceased further monthly payments in breach of Section 2(a)(ii) of the Agreement.

49.     In addition, ESO Partners refused to cause the Fund to execute the "Joinder to Engagement Letter" annexed as Exhibit III to the Agreement, in breach of its material obligation to do so as set forth in Section 14 of the Agreement in order to give effect to the agreed term that the Fund would be jointly and severally obligated ESO Partners for the latter's obligations thereunder.

50.     In March 2020, Snowbridge offered to suspend temporarily ESO Partners' payments of the monthly Advisory Fee beginning April 1, 2020, due to the Covid-19 pandemic, conditioned on ESO Partners' payment of the overdue payments since November 2019. Snowbridge sent ESO Partners an invoice for the Advisory Fees overdue from the prior four months, December 1, 2019 through March 1, 2020, totaling €120,000, but ESO Partners failed to respond to it. Since around May 2020, ESO Partners stopped responding altogether to Snowbridge's communications, including requests for payment.

51.     By letter dated December 4, 2020, in light of the anticipated final Closing of the Fund that month, Snowbridge's managing partner Mark Schroeder ("Schroeder") wrote to Schmid

to ask him for ESO Partners' payment of the overdue invoice for the unpaid Advisory Fees and to discuss the minimum €3 million Placement Fee due to Snowbridge under the Agreement, making clear that he wished "to discuss a plan, beneficial and fair to both parties, regarding the Placement Fee." Schmid replied by email on December 30, 2020 that, *inter alia*, "We will come back to you early in the new year with a proper response", and copied Edwards, Fakhry, and two additional ESO Partners employees on the email.

52.    Schmid responded substantively to Schroeder by letter dated January 29, 2021, in which he asserted, for the first time, that Snowbridge had failed to perform its obligations under the Agreement and threatened to countersue Snowbridge in the event that Snowbridge took action to pursue payment from ESO Partners, and also asserted that ESO Partners had "negligible assets". Snowbridge replied to Schmid through its counsel by letter dated March 9, 2021, and subsequent communications occurred through ESO Partners' counsel at the London and New York offices of the law firm Jones Day.

53.    By the time Schmid had written to Schroeder that ESO Partners had "negligible assets", Core Capital Partners LLP had already changed its name to ESO Capital Advisors LLP and, upon information and belief, a number of ESO Partners' management team had moved over to and begun working directly for ESO Advisors. As noted above, ESO Advisors had already been directly involved in the Fund as its designated AIFM.

54.    Upon information and belief, ESO Partners assigned a substantial portion of its business and assets to its affiliate ESO Advisors, including its interests and role as manager of the Fund. As such, Schmid, Fakhry, and Edwards continued to control the Fund and to profit personally from the management fees paid to ESO Advisors, just as they did when ESO Partners was the Fund's manager.

*Defendants' Denials and Misrepresentations*

55.    Notwithstanding Schmid's representation to Snowbridge that ESO Partners had "negligible assets" and the departure of members of its management team to ESO Advisors, ESO Partners continued to present itself publicly in its regulatory filings in the United Kingdom as a going concern.  Specifically, on March 31, 2021, ESO Partners filed its Annual Report and Financial Statements for 2020 in which ESO Partners stated unequivocally that the ESO Capital Group "have the ability and the intention to support ESO Capital Partners UK LLP for the foreseeable future.  Therefore, the members have prepared ESO Capital Partners UK LLP's financial statements on the basis that it is a going concern."

56.    On that same date, March 31, 2021, ESO Advisors filed its own Report and Financial Statements for 2020, stating that "the members have a reasonable expectation that the LLP has adequate resources to continue its operational existence for the foreseeable future.  Thus, the members continue to adopt the going concern basis of accounting in preparing the financial statements."

57.    ESO Capital Group directors Schmid, Fakhry, and Edwards were well aware of the Agreement and ESO Partners' obligations to Snowbridge thereunder. The respective Annual Report and Financial Statements for 2020 filed by ESO Partners and its parent entity ESO Capital UK Limited contained substantially identical descriptions of the €3 million minimum Placement Fee due to Snowbridge under the Agreement as a contingent liability of the entire ESO Capital Group:

> In 2018, the Group entered into an agreement with a third party advisory firm. During 2019 the services ceased and the remaining potential costs under the contract could be up to €2,5m over a period of time. The directors believe that the contract has been terminated and that it [sic] improbable that further costs will be incurred and due to a lack of delivery and fulfilment on the contract would contest any potential claim. To date there

<u>has been no communication with regards to any further costs, and as such the directors do not believe a provision is necessary and consider this to be a contingent liability</u>. [emphasis added]

58.     The final sentence of that statement was not true.  As noted above, as of the date of those filings, Schmid had been directly engaged in communications with Snowbridge regarding payments due from ESO Partners under the Agreement for several months.  By misrepresenting in the regulatory filings that there had been no such communication and thereby falsely implying that Snowbridge was not seeking the amounts owed under the Agreement, Schmid and ESO Partners wrongly justified their failure to set aside a reserve provision for it.

59.     Subsequently, ESO Partners and Schmid's counsel at Jones Day told Snowbridge's counsel that they did not represent or speak for Fakhry, Edwards, or ESO Advisors.  Therefore, by letter dated August 23, 2021, Snowbridge's counsel communicated directly to Fakhry, Edwards, and ESO Advisors about Snowbridge's claims against them, as well as against Schmid and ESO Partners, relating to the Agreement.

60.     Fakhry, Edwards, and ESO Advisors responded by means of a letter dated September 10, 2021 from their counsel at the London offices of the law firm Stephenson Harwood.  In his letter, their counsel denied that Fakhry and Edwards were directors of any of the ESO Capital Group or any of its constituent companies, or that they had ever been managing partners of or held any office in relation to ESO Partners.

61.     In fact, as of the date of their counsel's letter, photographs of Fakhry and Edwards were featured prominently on ESO Capital Group's web site (at esocapital.com/team) next to a photograph of Schmid with profile information identifying each of them as a "Partner" of ESO Capital.  Further, in Fakhry's profile on the professional networking web site linkedin.com, he identified himself as "Partner at ESO Capital Partners LLP" as well as "Co-Founder & Managing Partner" of "Core Capital LLP".  Similarly, in Edwards's linkedin.com profile, he identified

himself as "Partner, ESO Capital" and "Managing Partner" of "Core Capital Partners LLP". Snowbridge's counsel responded by letter dated September 26, 2021, pointing out to Fakhry and Edward's counsel the publicly available information on those web sites.

62.     Sometime thereafter, Schmid's photograph and profile were deleted from the ESO Capital web site, which no longer appears to reference him by name.  Fakhry's and Edwards' photographs and profiles remain on the web site, each of them still identified as a "Partner" of ESO Capital.  Fakhry's and Edwards' linkedin.com profiles also continue to identify each of them as a "Partner" of "ESO Capital Partners LLP" and "ESO Capital", respectively.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Breach of Contract**
**(Against ESO Partners)**

63.     Plaintiffs reallege the allegations of paragraphs 1 through 62 hereof as if set forth fully and at length herein.

64.     The Agreement constitutes a valid, enforceable contract between Snowbridge and ESO Partners. Upon information and belief, the term of the Agreement ended in December 2020 upon the final Closing of the Fund.

65.     Snowbridge performed all of its material obligations under the Agreement.

66.     Under the Agreement, ESO Partners was obligated to pay Snowbridge a monthly Advisory Fee of €30,000, due on the first day of each month during the term of the Agreement. ESO Partners materially breached the Agreement by failing to pay any Advisory Fees after November 2019. Snowbridge offered to suspend temporarily ESO Partners' obligation to pay the monthly Advisory Fees beginning April 1, 2020 provided that ESO Partners paid the Advisory Fees in arrears, but ESO Partners rejected that offer by failing to pay the arrears. Therefore, Advisory Fees for the remaining 13 months of the Agreement's term following November 2019,

totaling at least €330,000, are unpaid, overdue, and still owing from ESO Partners to Snowbridge.

67.     Under the Agreement, ESO Partners is obligated to pay Snowbridge a minimum Placement Fee of €3 million, with credits for €100,000 of the initial Work Fee paid and for all Advisory Fees actually paid, such credits totaling €520,000, and the total Placement Fee due after accounting for such credits being €2,480,000, plus interest as provided in the Agreement.

68.     ESO Partners has failed and refused to pay the aforesaid Placement Fee or any portion thereof to Snowbridge, despite Snowbridge's demands therefor.

69.     ESO Partners further materially breached the Agreement by failing and refusing to cause the Fund to execute a Joinder to the Agreement, thereby hindering Snowbridge's ability to enforce the  Agreement against the Fund as the parties expressly intended as stated in the Agreement.

70.     For the  foregoing reasons, Snowbridge has been damaged by ESO  Partners' breaches of the Agreement, in an amount to be determined at trial but in any event no less than €2,480,000, and is entitled to recover same, with contractual interest, from ESO Partners.

71.     In addition, pursuant to the Agreement, Snowbridge is entitled to recover its attorneys' fees, costs, and expenses incurred as a result of this action and any appeal therefrom.

## SECOND CLAIM FOR RELIEF
### Breach of Contract as Successor
### (Against ESO Advisors)

72.     Plaintiffs reallege the allegations of paragraphs 1 through 71 hereof as if set forth fully and at length herein.

73.     As set forth above, ESO Partners assigned and transferred all or a substantial portion of its business and assets, including its role as manager of the Fund and its right to receive fees therefrom, to ESO Advisors.

74.     The direct and indirect partners and principals, and management team, of ESO Partners and ESO Advisors are substantially the same, and at all relevant times both companies have shared the same London street address.

75.     At all relevant times, ESO Advisors had actual knowledge of the Agreement and its provisions, including the €3 million minimum Placement Fee due to Snowbridge thereunder.

76.     Upon information and belief, the assignment and transfer of ESO Partners' role as the Fund's manager to ESO Advisors was intended, in whole or substantial part, to defraud Snowbridge as a creditor of ESO Partners by rendering it effectively judgment-proof.

77.     Following the aforesaid assignment and transfer, ESO Advisors continued the same business of ESO Partners.

78.     Under Section 13 of the Agreement, the Agreement is binding upon "any successor or assign of any substantial portion of [ESO Partners'] business and/or assets", and ESO Advisors was at all times fully aware of that provision of the Agreement.

79.     For the foregoing reasons, ESO Advisor is a successor to ESO Partners under the Agreement, the Agreement is binding and enforceable against ESO Advisors, and ESO Advisors is liable for all obligations of ESO Partners thereunder.

80.     Therefore, Snowbridge is entitled to recover from ESO Advisors damages in an amount to be determined at trial but in any event no less than €2,480,000, with contractual interest, and its attorneys' fees, costs, and expenses incurred as a result of this action and any appeal therefrom.

**THIRD CLAIM FOR RELIEF**
**Tortious Interference with Contract**
**(Against ESO Advisors, Schmid, Fakhry, and Edwards )**

81.     Plaintiffs reallege the allegations of paragraphs 1 through 80 hereof as if set forth

fully and at length herein.

82.   Schmid, Fakhry, and Edwards, individually and/or on behalf of ESO Advisors and ESO Advisors to the extent it might not be deemed a party to the Agreement, each knowing the contents of the Agreement, intentionally procured ESO Partners' breaches of the Agreement as set forth above, without justification and each for their own benefit and profit, causing damages to Snowbridge.

83.   Therefore, Snowbridge is entitled to recover from each of them damages in an amount to be determined at trial but in any event no less than €2,480,000, with contractual interest, and its attorneys' fees, costs, and expenses incurred as a result of this action and any appeal therefrom.

## FOURTH CLAIM FOR RELIEF
### Breach of Duty to Creditors of ESO Partners
### (Against Schmid, Fakhry, and Edwards)

84.   Plaintiffs reallege the allegations of paragraphs 1 through 83 hereof as if set forth fully and at length herein.

85.   During the relevant time period in 2020 and 2021, ESO Partners was insolvent and/or its solvency was in doubt, giving rise to a duty on the parts of Schmid, Fakhry, and Edwards, as directors and/or managers of ESO Partners, to protect the interests of ESO Partners' creditors, including Snowbridge, over the interests of ESO Partners and its members.

86.   Schmid, Fakhry, and Edwards breached their respective duties to Snowbridge by transferring ESO Partners' role as advisor to and manager of the Fund to another entity and, upon information and belief, by causing other members of the ESO Capital Group to cease and/or withdraw their financial support of ESO Partners, thereby reducing if not eliminating entirely ESO Partners' ability to pay amounts owed to Snowbridge under the Agreement.

87.     Therefore, Snowbridge is entitled to recover from each of Schmid, Fakhry, and Edwards damages in an amount to be determined at trial but in any event no less than €2,480,000, with contractual interest, and its attorneys' fees, costs, and expenses incurred as a result of this action and any appeal therefrom.

### FIFTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(Against ESO Advisory, Schmid, Fakhry, and Edwards)**

88.     Plaintiffs reallege the allegations of paragraphs 1 through 87 hereof as if set forth fully and at length herein.

89.     As set forth above, Snowbridge provided valuable advisory and other services under the Agreement for which Schmid, Fakhry, Edwards, and, to the extent it might not be deemed a party to the Agreement, ESO Advisors prevented Snowbridge from being paid, which services benefitted Schmid, Fakhry, Edwards, and ESO Advisors at Snowbridge's expense, such that it would be against equity and good conscience to permit them to retain such benefits without paying Snowbridge therefor.

90.     Therefore, Snowbridge is entitled to damages from said defendants in the amount by which they were unjustly enriched, to be determined at trial.

### SIXTH CLAIM FOR RELIEF
**Declaratory Judgment**

91.     Plaintiffs reallege the allegations of paragraphs 1 through 90 hereof as if set forth fully and at length herein.

92.     As alleged above, defendants assert that ESO Partners has no obligation to plaintiffs under the Agreement to pay the minimum Placement Fee and other amounts thereunder and that ESO Advisors is not bound by the Agreement and has no obligation to plaintiffs thereunder.

93.     As alleged above, plaintiffs dispute defendants' position, and assert that ESO Partners is obligated to plaintiffs to pay the minimum Placement Fee and other amounts thereunder, and that ESO Advisors is bound by the Agreement as successor to ESO Partners thereunder and therefore is obligated to plaintiffs to pay the minimum Placement Fee and other amounts thereunder.

94.     Thus, there is an actual, justiciable controversy.

95.     Therefore, Snowbridge seeks declaratory judgment that ESO Partners remains and is obligated under the Agreement to plaintiffs to pay the minimum Placement Fee and other amounts thereunder, and that ESO Advisors is bound by the Agreement as successor to ESO Partners thereunder and therefore is obligated to plaintiffs to pay the minimum Placement Fee and other amounts due thereunder.

**WHEREFORE,** plaintiffs Snowbridge Advisors LLC and Snowbridge Securities LLC demand that judgment be entered against defendants ESO Capital Partners UK LLP, Soho Square Capital LLP f/k/a ESO Capital Advisors LLP f/k/a Core Capital Partners LLP, Alexander Schmid, Walid Fakhry, and Stephen Edwards, as follows:

a.     Awarding plaintiffs their damages from defendants ESO Partners and ESO Advisors for breach of the Agreement, including but not necessarily limited to the minimum Placement Fee and contractual interest thereon, in an amount to be determined at  trial;

b.     In addition and/or in the alternative, awarding plaintiffs their damages from defendants ESO Advisors, Schmid, Fakhry, and Edwards in the amount by which said defendants have been unjustly enriched at plaintiffs' expense;

c.     In addition and/or in the alternative, awarding plaintiffs their damages from the tortious interference with the Agreement on the parts of defendants ESO Advisors, Schmid,

Fakhry, and Edwards;

       d.      Declaring that ESO Advisors is successor to ESO Partners under the Agreement and is thus bound thereby, and that both ESO Partners and ESO Advisors are obligated to pay plaintiffs the minimum Placement Fee and other amounts due under the Agreement;

       e.      Awarding plaintiffs their attorneys' fees, expenses, and costs incurred with respect to this action and any appeal therefrom, as provided in the Agreement;

       f.      Awarding plaintiffs pre-judgment and post-judgment contractual and/or statutory interest, and statutory costs; and

       g.      Granting such other and further relief as the Court may deem just and proper.

Dated November 3, 2021 in New York, New York.

                      **BARTON LLP**

                      By: _____
                         Roger E. Barton
                         Randall L. Rasey

                      711 Third Avenue, 14th Floor
                      New York, New York 10017
                      (212) 687-6262
                      rbarton@bartonesq.com
                      rrasey@bartonesq.com

                      *Attorneys for Plaintiffs Snowbridge Advisors LLC and Snowbridge Securities LLC*