UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
SNOWBRIDGE ADVISORS LLC et al.,            :
                                           :
        Plaintiffs,                        :
                                           :          21-cv-9086 (JSR)
                 -v-                       :
                                           :          OPINION AND ORDER
                                           :
ESO CAPITAL PARTNERS UK LLP et al.,        :
                                           :
        Defendants.                        :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

        On December 17, 2021, defendants Soho Square Capital LLP
("Soho Square"), Walid Fakhry, and Stephen Edwards moved to dismiss
plaintiffs' claims against them for lack of personal jurisdiction
under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim
upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).
ECF No. 26.[1] By bottom-line order dated March 3, 2022, the Court

_____

[1]     While initially Soho Square, Fakhry, and Edwards also moved
to dismiss for lack of subject matter jurisdiction under 12(b)(1),
arguing that the complaint did not sufficiently allege facts to
show complete diversity, they subsequently withdrew their 12(b)(1)
motion, noting that if it became apparent that the parties are not
completely diverse, they would renew the issue before the Court.
See ECF No. 36 at 10 n.3. Then, however, the remaining defendant,
ESO Capital Partners UK LLP ("ESO Partners") filed a motion to
dismiss on 12(b)(1) grounds, see ECF No. 37, following which Soho
Square, Fakhry, and Edwards then filed their own new motion to
dismiss for lack of subject matter jurisdiction, see ECF No. 39.
Since, as detailed below, the Court now dismisses the claims
against Fakhry and Edwards on 12(b)(2) and, alternatively,
12(b)(6) grounds, dismissing those defendants from the case, the
12(b)(1) motion is denied as moot as to them. Soho Square's and

partly granted and partly denied the motion of Soho Square, Fakhry, and Edwards to dismiss plaintiffs' claims against them, but granted in full the 12(b)(2) motion of Fakhry and Edwards to dismiss the entire complaint as to them for lack of personal jurisdiction. In the same Order, the Court also granted the 12(b)(6) motion to dismiss Counts Three and Five against Fakhry, Edwards, and Soho Square for failure to state a claim, but denied Soho Square's 12(b)(2) motion and its 12(b)(6) motion to dismiss Count Two. Finally, the Order denied further discovery on jurisdiction as unnecessary, and denied plaintiffs' request for leave to amend their claims. The reasons for all of these rulings are set forth below.

## BACKGROUND

Unless otherwise indicated, the following factual allegations are taken from the complaint. See ECF No. 1.

### The Parties

Co-plaintiff Snowbridge Advisors, LLC, a financial advisory and placement firm, is a Delaware limited liability company with a principal place of business in New York City. Compl. ¶ 2. In

---

ESO Partners' 12(b)(1) motions to dismiss remain pending, however, and the parties' briefing on these motions was completed just on March 1, 2022. Accordingly, the Court will address those motions subsequently.

September 2019, Snowbridge Advisors formed co-plaintiff Snowbridge Securities LLC and transferred its securities transactions to Snowbridge Securities. Id. ¶ 22. Snowbridge Securities, a broker-dealer firm that is registered with the SEC and a FINRA member, is a Delaware limited liability company with a principal place of business in New York City. Id. ¶ 3.

Defendant ESO Capital Partners UK LLP ("ESO Partners"), an investment management firm, is a limited liability partnership organized under the laws of England and Wales with a registered office address in London. Id. ¶¶ 4, 18. According to the complaint, ESO Partners was founded by individual defendant Alexander Schmid in or around 2006. Id. ¶¶ 6, 18. Schmid has been the CEO of ESO Partners and was a director and CEO of the ESO Capital Group at the relevant times. Id. ¶ 6. "Upon information and belief," in or around May 2018, ESO Partners acquired Soho Square (then known as Core Capital Partners LLP). Id. ¶ 19.

Defendant Soho Square Capital LLP ("Soho Square"), a UK-based lower mid-market private equity fund, is a limited liability partnership organized under the laws of England and Wales with a registered office address in London (the same address as ESO Partners). Id. ¶ 5. Soho Square is registered as an investment advisor with the SEC and has been at the relevant times a member of the ESO Capital Group. Id. Soho Square was previously known as

Core Capital Partners, LLP, renamed ESO Capital Advisors LLP in December 2020, and in October 2021 renamed Soho Square Capital LLP. Id. ¶¶ 5, 19-20. According to the complaint, Soho Square was founded in 2005 by individual defendants Walid Fakhry and Stephen Edwards. Id. ¶ 19. According to the complaint, Fakhry and Edwards are, or were at the relevant times, both directors of the ESO Capital Group and managing partners of ESO Partners (having joined the ESO Partners' management board following ESO Partners' acquisition of Soho Square, then Core Capital Partners). Id. ¶¶ 7, 19.[2]

The Agreement

Snowbridge Advisors, DCS Advisory LLC,[3] and ESO Partners entered into a letter agreement on October 1, 2018, in connection

---

[2]   In a letter from their UK counsel dated September 10, 2021, Fakhry and Edwards denied that they were directors of the ESO Capital Group or any of its constituent companies, or that they had ever been managing partners of or held any office in relation to ESO Partners. Id. ¶ 60. According to the complaint, however, ESO Capital Group's web site featured photographs of Fakhry and Edwards next to one of Schmid and identified both Fakhry and Edwards as a "Partner" of ESO Capital. Id. ¶ 61. Fakhry's and Edwards's LinkedIn profiles also identified themselves as "Partner" at "ESO Capital Partners LLP" and "ESO Capital," respectively. Id.

[3]   About a year after the Agreement was executed, in September 2019, Snowbridge Advisors formed Snowbridge Securities; on September 12, 2019, DCS's rights and obligations under the Agreement were assigned to and assumed by Snowbridge Securities. Id. ¶ 22.

with the proposed private placement of interests in European
Special Opportunities Fund VII and any parallel, feeder, or
alternative investment vehicles of European Special Opportunities
Fund VII (collectively, the "Fund"). Id. ¶ 21.[4] ESO Partners
engaged Snowbridge Advisors and DCS to serve as ESO Partners'
exclusive financial advisor worldwide and exclusive placement
agent in North America in connection with the Fund, which would be
managed by ESO Partners. Id. ¶ 21. Soho Square, at the time known
as Core Capital, was designated in ESO Partners' SEC filings as
the Fund's Alternative Investment Fund Manager ("AIFM"), a role
prescribed under then-applicable European Union law. Id. ¶ 42.

According to the complaint, ESO Partners, "in order to induce
Snowbridge Advisors to enter into the Agreement," made various
representations about its experience and relationships, including
about the investment it could attract to the Fund. Id. ¶ 24.
According to the complaint, Snowbridge Advisors was not willing to
enter into the Agreement with ESO Partners unless Snowbridge was
guaranteed a minimum fee "to protect itself in the event that ESO
Partners' representations were not correct." Id. ¶ 25. ESO
Partners agreed to pay Snowbridge Advisors a €3 million minimum
placement fee regardless of the amount of funds raised. Id.

---

[4]   A copy of the Agreement is attached to the complaint as
Exhibit A.

Prior to executing the Agreement, "the parties engaged in substantial discussions, negotiations of terms, and due diligence, including at a meeting held on August 19, 2018, in New York attended by Schmid and Edwards." Id. ¶ 23.

Under the Agreement, ESO Partners agreed to compensate Snowbridge by paying an initial work fee of €300,000, a monthly advisory fee of €30,000, and a minimum placement fee, as well as interest on the unpaid balance of the placement fee. Id. ¶¶ 28–29. Under the Agreement, in the event that the fund was terminated early for any reason, "it will in no way relieve [ESO Partners] of its obligation to pay [Snowbridge] the balance of any Placement Fee payable pursuant to this paragraph 2, plus accrued interest." Id. ¶ 31. The Agreement provided that either ESO Partners or Snowbridge could terminate the agreement early for "cause" (which it defined), or by giving the other party at least 30 days' prior written notice, though in the event of early termination or expiration, the provisions of several sections (including those addressing compensation and choice of law) would survive. Id. ¶¶ 32–33.

The Agreement further provided that all lawsuits or disputes arising out of or relating to the Agreement would be governed by and construed and enforced in accordance with the laws of New York, "without giving effect to principles of conflicts of law," and

-6-

that any such lawsuit would be brought exclusively in the federal or state courts located in New York, New York. Id. ¶¶ 34-35. The Agreement also included a jury waiver. Id. ¶ 36.

The Agreement provided that it could not be amended, modified, or waived except by a written instrument signed by Snowbridge and ESO Partners. Id. ¶ 37. The Agreement also provided that it "shall be binding upon DCS Advisory, Snowbridge, [ESO Partners] and the Fund and their respective successors and assigns and any successor or assign of any substantial portion of [ESO Partners'], the Fund's and DCS Advisor's respective businesses and/or assets" and that ESO Partners' obligations under the Agreement were joint and several with the Fund. Id. ¶¶ 38; Ex. A at 12. Notwithstanding this, however, the Agreement provided that "neither [ESO Partners] nor the Fund may assign or otherwise transfer any of its rights and obligations under this Agreement without the prior written consent of Snowbridge and DCS Advisory and any purported assignment or other transfer of any such rights and obligations without such consent shall be null and void . . . ." Ex. A at 12. Under the Agreement, ESO Partners also assumed an express obligation to cause the Fund to be joined as an additional party to the Agreement. Compl. ¶ 39.

Snowbridge's Performance & ESO Partners' Alleged Breach

According to the complaint, Snowbridge devoted substantial resources to identifying and placing investors in the Fund, performing at high standards, and going well beyond the scope of the Agreement. Id. ¶ 40-41. According to the complaint, ESO Partners "effectively outsourced" to Snowbridge a number of functions typically performed by an investment firm internally and "imposed extraordinary reporting demands," justifying these "unique demands" by citing the €3 million minimum placement fee Snowbridge was guaranteed to receive under the Agreement. Id. ¶ 41.

On November 6, 2018, Schmid, Fakhry, and Edwards met in person with Snowbridge at its offices in New York to discuss marketing, feedback from investors, and other matters concerning the Fund and ESO Partners' engagement of Snowbridge. Id. ¶ 43. On November 8, 2018, ESO Partners held its annual general meeting for all of its funds in New York, which Schmid, Fakhry, and Edwards each attended. Id. ¶ 44. According to the complaint, by the end of 2019, Snowbridge had approached more than 500 prospective investors on behalf of the Fund and had arranged over 100 first-round and follow-up meetings with prospective investors. Id. "Most of those investor meetings were attended in person by one or more of Schmid, Fakhry, and Edwards, including more than two dozen such meetings held in New York." Id.

According to the complaint, ESO Partners failed to reach its first closing target, its existing investors refused to recommit to the Fund, and ESO Partners' prior funds performed poorly; the complaint asserts that this prevented Snowbridge from being able to attract new investors to the Fund. Id. ¶¶ 45-46. According to the complaint, ESO Partners, Schmid, Fakhry, and Edwards did not at any time provide notice to Snowbridge of ESO Partners' intent to terminate the Agreement or suggest that there might be cause for termination. Id. ¶ 47.

ESO Partners made initial payments to Snowbridge pursuant to the Agreement, including the initial work fee of €300,000 and the monthly advisory fee of €30,000, which ESO Partners paid for 14 months, through November 2019. Id. ¶ 48. In March 2020, Snowbridge offered to temporarily suspend ESO Partners' payments of the monthly advisory fee beginning April 1, 2020, due to the COVID-19 pandemic, conditioned on ESO Partners paying the overdue payments since November 2019. Id. ¶ 50. Snowbridge sent an invoice for the overdue advisory fees from the previous four months; ESO Partners did not respond. Id.

In a letter dated December 4, 2020, in light of the anticipated final closing of the Fund that month, Snowbridge asked Schmid for ESO Partners' payment of the unpaid advisory fees and to discuss the minimum €3 million placement fee, regarding which

Snowbridge wished "to discuss a plan, beneficial and fair to both parties." Id. ¶ 51. On December 30, 2020, Schmid replied by email, stating, inter alia, "We will come back to you early in the new year with a proper response," and copying Edwards, Fakhry, and two ESO Partners employees. Id. Schmid subsequently sent Snowbridge a letter, dated January 29, 2021, asserting that Snowbridge had failed to perform its obligations under the Agreement and threatening to countersue Snowbridge in the event that Snowbridge took action to pursue payment from ESO Partners. Id. ¶ 52. Schmid also asserted that ESO Partners had "negligible assets." Id.

According to the complaint, "upon information and belief," by the time Schmid wrote to Snowbridge that ESO Partners had "negligible assets," Core Capital Partners had changed its name to ESO Capital Advisors (later to be renamed Soho Square), and a number of members of ESO Partners' management team had moved over to and begun working directly for ESO Advisors (later to be renamed Soho Square), which had already been directly involved in the Fund as its designated AIFM. Id. ¶ 53. Also "upon information and belief," ESO Partners assigned a substantial portion of its business and assets to its affiliate [Soho Square (then called ESO Advisors)], including its interests and role as manager of the Fund." Id. ¶ 54. "As such, Schmid, Fakhry, and Edwards continued to control the Fund and to profit personally from the management

fees paid to ESO Advisors [later to be renamed Soho Square], just as they did when ESO Partners was the Fund's manager." Id.

In its public regulatory filings in the UK, ESO Partners represented itself as a going concern, including in its 2020 Annual Report, in which it stated that that ESO Capital Group "have the ability and the intention to support ESO Capital Partners UK LLP for the foreseeable future," and that "[t]herefore, the members have prepared ESO Capital Partners UK LLP's financial statements on the basis that it is a going concern." Id. ¶ 55. ESO Advisors (later to be renamed Soho Square) filed its own 2020 Report, stating substantially the same. Id. ¶ 56.

According to the complaint, the ESO Partners 2020 Annual Report and the Annual Report for its parent entity ESO Capital UK Limited contained substantially identical descriptions of the €3 million minimum placement fee due to Snowbridge, stating that "[t]o date there has been no communication with regards to any further costs, and as such the directors do not believe a provision is necessary and consider this to be a contingent liability." Id. ¶ 57. According to the complaint, the quoted sentence is not true, because Schmid had already been communicating with Snowbridge regarding payments due from ESO Partners under the agreement, and that Schmid and ESO Partners thus wrongly justified their failure to set aside a reserve provision for it. Id. ¶ 58.

Snowbridge Advisors and Snowbridge Securities filed their complaint in this Court on November 3, 2021. ECF No. 1. Soho Square, Fakhry, and Edwards filed their motions to dismiss on December 17, 2021, ECF No. 26, and after the motion was fully briefed, the Court heard oral argument on February 17, 2022.

## LEGAL STANDARD

With respect to personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over a defendant. See MacDermid, Inc. v. Deiter, 702 F.3d 725, 728 (2d Cir. 2012). The plaintiff must allege facts that, if true, would establish a prima facie case of personal jurisdiction "notwithstanding any controverting presentation by the moving party." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013) (per curiam). A prima facie case includes showing that (1) there was proper service, (2) there is a statutory basis for personal jurisdiction, and (3) "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012). Pleadings and affidavits should be construed "in the light most favorable to plaintiffs, resolving all doubts in their favor." Dorchester Fin. Sec., 722 F.3d at 85. This does not mean, however, that the court accepts as true "a legal conclusion couched

as a factual allegation," <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 185 (2d Cir. 1998), nor allegations "controverted by the defendant's affidavits." <u>MacDermid</u>, 702 F.3d at 727.

With respect to failure to state a claim, a complaint, in order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. See <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Twombly</u>, 550 U.S. at 570.

### DISCUSSION

With respect to the motions to dismiss on the ground that the Court lacks personal jurisdiction, the Court finds that it lacks personal jurisdiction over Fakhry and Edwards, but that it does have personal jurisdiction over Soho Square under N.Y. C.P.L.R. § 302(a)(1). With respect to the motions to dismiss for failure to

state a claim, the Court grants that motion as to Counts Three and Five, dismissing those claims against Soho Square (and, if they had not otherwise been dismissed, against Fakhry and Edwards). The Court denies, however, Soho Square's 12(b)(6) motion to dismiss Count Two, finding that the complaint adequately alleges successor liability as to breach of contract.

## I. Personal Jurisdiction

Soho Square, Fakhry, and Edwards first move to dismiss the claims against them for lack of personal jurisdiction under Rule 12(b)(2). Plaintiffs do not dispute that the court lacks general jurisdiction over any of the defendants; the issue is thus whether the court has specific jurisdiction. "[S]pecific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction." In re Roman Catholic Diocese Inc., 745 F.3d 30, 38 (2d Cir. 2014) (per curiam); see also Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch, No. 14-CV-01568 JPO, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) ("Specific personal jurisdiction, in contrast [to general personal jurisdiction], subjects a defendant to suit only on claims that arise out of or relate to the defendant's conduct in the forum."). As set out below, the Court finds that while it does not have personal

jurisdiction over either Fakhry or Edwards, it does have personal jurisdiction over Soho Square.

### A. *Fakhry and Edwards*

The two claims alleged against Fakhry and Edwards individually are tortious interference with contract (Count Three) and unjust enrichment (Count Five). Plaintiffs argue that the Court has personal jurisdiction over Fakhry and Edwards under N.Y. C.P.L.R. §§ 302(a)(1) and 302(a)(3).

     1.    N.Y. C.P.L.R. § 302(a)(1)

To establish specific personal jurisdiction under § 302(a)(1), the plaintiff must establish two requirements: (1) the defendant must have "transacted business within the state," and (2) "the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). A claim arises from a particular transaction "when there is some articulable nexus between the business transacted and the cause of action sued upon." Id. (internal citation and quotation marks omitted). There must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168-69 (2d Cir. 2013) (internal quotation marks and citation omitted). "[W]hether a plaintiff's claim arises from a defendant's New York contacts

depends upon the nature and elements of the particular causes of action pleaded. . . . [W]here at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." Id. at 169 (internal citations and quotation marks omitted).

The complaint alleges that both Edwards and Fakhry are domiciled in the United Kingdom, but that the court has personal jurisdiction over both defendants because they regularly conducted business in New York, including with respect to the Agreement, and that they have engaged in activities targeting New York that give rise to the claims in this case. Compl. ¶¶ 6-8, 13-14. As to the business activity in New York, the complaint alleges that Edwards and Fakhry attended various meetings with Snowbridge in New York, including in relation to the Agreement and investor meetings for the Fund. Specifically, the complaint alleges that Edwards attended an August 2018 meeting regarding the negotiation of the Agreement, a November 2018 meeting to discuss implementation of the Agreement, an investor annual general meeting in November 2018, and at least six other meetings with prospective investors, all in New York. Id. ¶¶ 23, 42-44; see also Mark Schroeder Decl. (ECF No. 34) ¶ 14. The complaint alleges that Fakhry also attended the November 2018 meeting to discuss implementation of the Agreement

and the November 2018 investor annual general meeting, as well as at least two other meetings with prospective investors, all in New York. Id. Furthermore, according to the complaint, Fakhry and Edwards are, or were at the relevant times, both directors of the ESO Capital Group and managing partners of ESO Partners (having joined the ESO Partners' management board following ESO Partners' acquisition of Soho Square, then Core Capital Partners). Compl. ¶¶ 7, 19. While in their brief, Fakhry and Edwards refer to their denial that they are or were managing partners of ESO Partners, see ECF No. 27 at 20 n.5, their sole support for this is a letter from their UK counsel, see footnote 2, supra, and they do not proffer any affidavits to that effect, which, if submitted, the Court could properly consider for purposes of the 12(b)(2) motion, though not for purposes of the 12(b)(6) motion. For purposes of this motion to dismiss then, the Court takes the well-pleaded facts in the complaint as true and considers Fakhry and Edwards directors of the ESO Capital Group and managing partners of ESO Partners.

Plaintiffs argue that the complaint sufficiently alleges personal jurisdiction over Fakhry and Edwards because the tortious interference with contract and unjust enrichment claims arise out of the meetings that Edwards and Fakhry attended in New York, particularly the meeting Edwards attended regarding negotiating the Agreement at issue in this case, as well as the meeting both

attended in New York regarding implementing the Agreement. See
Clarendon Nat. Ins. Co. v. Lan, 152 F. Supp. 2d 506, 517 (S.D.N.Y.
2001) (finding that "proof of one transaction" in New York is
sufficient to invoke jurisdiction under § 302(a)(1), as long as
the defendant's activities in New York "were purposeful and there
is a substantial relationship between the transaction and the claim
asserted"). Plaintiffs argue that by attending such meetings,
Edwards and Fakhry have purposefully availed themselves of the
privilege of transacting business in New York. Plaintiffs further
argue that these meetings are related to the tort claims against
Fakhry and Edwards, even if they were attending the meetings on
behalf of ESO Capital Group, "because the conduct for which they
are liable centers on their attempt to prevent Snowbridge's
recovery under its Agreement with ESO Partners." ECF No. 29 at 12.
Finally, plaintiffs argue that New-York based contractual
negotiations may constitute transacting business in New York as
long as the negotiations relate to the same agreement that is the
subject of the lawsuit, and that this supports the Court exercising
personal jurisdiction over Fakhry and Edwards.

However, the fact that, *for parties to the contract*, New-York
based contractual negotiations can constitute transacting business
in New York as long as the negotiations relate to the same
agreement that is the subject of the lawsuit, the same is not

necessarily true *for non-party individuals* like Edwards and Fakhry. See <u>Clarendon</u>, 152 F. Supp. 2d at 517; <u>Levisohn Lerner Berger & Langsam v. Medical Taping Systs., Inc.</u>, 10 F. Supp. 2d 334, 343 (S.D.N.Y. 1998); <u>see also</u> <u>Retail Software Servs. v. Lashlee</u>, 854 F.2d 18, 22 (2d Cir. 1988). If the claims against Fakhry and Edwards were for breach of contract, or if they were parties to the Agreement that was the subject of this suit, then their participation in a meeting negotiating the Agreement would be enough to establish a substantial relationship or articulable nexus between the business they transacted in New York and the claim at issue. Thus, in all of the cases cited by plaintiffs, the courts found that *for breach of contract claims*, the exercise of personal jurisdiction was proper over nondomiciliaries that were party to the contract (or individuals who were principals or officers of the entity that was party to the contract) that was negotiated in New York or otherwise had a substantial relationship with New York. See <u>Clarendon</u>, 152 F. Supp. 2d at 517; <u>Levisohn</u>, 10 F. Supp. 2d at 343; <u>see also</u> <u>Lashlee</u>, 854 F.2d at 22.

But even accepting as true for purposes of this motion to dismiss the complaint's allegation that Fakhry and Edwards were partners of ESO Partners at the time they attended these meetings in New York related to the Agreement, the complaint's factual allegations are not sufficient to show that Fakhry's and Edwards's

participation in any of the meetings has a substantial relationship or articulable nexus to their alleged acts constituting the two claims against them -- tortious interference with contract and unjust enrichment -- in part because Snowbridge does not allege with any specificity what exactly Fakhry or Edwards did vis-à-vis ESO Partners that gives rise to their claims.

Accordingly, the Court does not have personal jurisdiction over either Fakhry or Edwards under N.Y. C.P.L.R. § 302(a)(1) because the complaint does not plead sufficient factual allegations to establish a substantial relationship or articulable nexus between the business they transacted in New York and the only claims brought against them in this case.

   2.   N.Y. C.P.L.R. § 302(a)(3)

In order to establish personal jurisdiction under § 302(a)(3), a plaintiff must sufficiently allege that the defendant committed a tortious act outside of New York and that the defendant's conduct caused injury within New York. In addition, a plaintiff must sufficiently allege either (i) that the defendant regularly does business, or engages in any other persistent conduct, or derives substantial revenue from goods used or services rendered in the state, or (ii) that the defendant expects or reasonably should have expected the act to have consequences in New York, and that

the defendant derives substantial revenue from interstate or international commerce.

Snowbridge Advisors and Snowbridge Securities are incorporated in Delaware and the complaint alleges that their principal place of business is in New York. Compl. ¶¶ 2-3. Here, Fakhry and Edwards argue that plaintiffs have not sufficiently alleged either that the situs of the injury was New York, or that Fakhry and Edwards satisfy the requirements of either §§ 302(a)(3)(i) or (ii) -- that Fakhry or Edwards regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in New York, see § 302(a)(3)(i), or expect or should reasonably expect the act to have consequences in the state and derive substantial revenue from interstate or international commerce, see § 302(a)(3)(ii).

     *i.  Situs of Injury*

An injury occurs at the place of the "original event" which caused it, which is distinct from the initial tort and from the final economic injury and the felt consequences of the tort. See Pincione v. D'Alfonso, 506 F. App'x 22, 26 (2d Cir. 2012) (summary order) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999)). Generally for a commercial tort, New York is the situs of the injury "if the

plaintiff raises the inference that the tortious conduct caused him to lose business or customers within the state." Id.

Fakhry and Edwards argue that the complaint raises no inference that plaintiffs lost business or customers in New York, and the fact that the complaint asserts that plaintiffs' principal place of business is in New York is not alone sufficient to confer jurisdiction under § 302(a)(3). Fakhry and Edwards further argue that Snowbridge suffering financial consequences in New York by not receiving fees pursuant to the Agreement, to which Fakhry and Edwards were not a party, is not sufficient to show that Snowbridge's injury occurred in New York.

In response, plaintiffs argue that the situs-of-injury test for a nonphysical, commercial injury requires the court to look not solely at the plaintiffs' domicile, but instead at where "the critical events associated with the dispute took place." Art Assure Ltd., LLC v. Artmentum CmbH, No. 14-CV-3756 (LGS) 2014 WL 5757545, at *5 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citations omitted). Plaintiffs argue that even though both Snowbridge Advisors and Snowbridge Securities are organized as Delaware entities, their principal offices are located and have members domiciled in New York. Snowbridge further argues that because Fakhry's and Edwards's allegedly tortious conduct, though it occurred in the UK, was intended to prevent Snowbridge from

recovering under its Agreement with ESO Partners, which was negotiated and partially executed by Snowbridge in New York, the situs of the injury for purposes of § 302(a)(3) is New York.

It is not, however, enough to confer personal jurisdiction under § 302(a)(3) that Snowbridge's offices and some of its members are in New York, and that the torts alleged relate to an Agreement negotiated and partially executed in New York, when the alleged tortfeasors committed their alleged torts in the UK and where plaintiffs do not allege that plaintiffs lost business or customers in New York. See Pincione, 504 F. App'x at 36 (The "occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." (internal quotation marks omitted)).

It is true that, in contrast with Pincione, here there is more than just plaintiffs' fortuitous location in New York: the Agreement underlying the claims was also negotiated in New York. However, this is still not enough to link Fakhry and Edwards on the claims against them for tortious interference with contract and unjust enrichment. See Madison Cap. Markets, LLC v. Starneth Europe B.V., No. 15-CV-7213, 2016 WL 4484251, at *6 (S.D.N.Y. Aug. 23, 2016) (holding "the fact that [Plaintiff] maintains an office in New York and, presumably, the effect of the lost fees allegedly

-23-

due to Plaintiff is felt in New York" to be insufficient for jurisdiction under § 302(a)(3)). Accordingly, the Court finds that the complaint does not plausibly allege that the situs of the injury is New York, and that the Court thus does not have personal jurisdiction over Fakhry or Edwards under § 302(a)(3) on the relevant claims against them.

Furthermore, as discussed below, the complaint does not sufficiently allege that either Edwards or Fakhry regularly does or solicits business in New York, or engages in any other persistent course of conduct in New York, or derives substantial revenue from goods used or consumed or services rendered in New York for purposes of § 302(a)(3)(i), or expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce for purposes of § 302(a)(3)(ii).

   i.   *Doing/Soliciting Business or Deriving Substantial Revenue*

While the complaint states in conclusory fashion that Fakhry and Edwards "regularly conduct" business in New York, see Compl. ¶¶ 11, 13-14, it does not specify further or otherwise allege that they derive substantial revenues from interstate or international commerce.

Plaintiffs argue that the complaint's allegations that Fakhry and Edwards were partners of ESO Partners are enough to show that

they "derive substantial revenue" from New York and interstate commerce because the complaint alleges that ESO Partners does or did. The complaint alleges that ESO Partners engaged Snowbridge for the purpose of soliciting prospective investors, including in New York, to invest in its Fund in Europe through feeder and ancillary funds in the U.S. and other jurisdictions, Compl. ¶¶ 21, 40; plaintiffs argue that this supports the inference that ESO Partners regularly engages in such interstate commerce and derives substantial revenues, (fees for managing its investors' money), from the commerce and particularly from investors located in New York. The complaint also alleges that Fakhry and Stephens are managing partners of Soho Square, which the complaint alleges assumed and continued ESO Partners' business, including the management of the Fund. Id. ¶¶ 7, 19.

However, the complaint's allegations do not state sufficient facts to support the inference that ESO Partners derives "substantial" revenue in New York. Neither does the complaint contain sufficient (or any) factual allegations attributing "substantial" revenue or a persistent course of conduct on the part of Fakhry or Edwards beyond their alleged status as partners of ESO Partners. And neither does the complaint contain sufficient (or any) factual allegations that either derives substantial revenue from interstate or international commerce beyond their

status as partners of Soho Square. Under this prong, too, the complaint's allegations are insufficient to make out personal jurisdiction under § 302(a)(3).

Accordingly, the court does not have personal jurisdiction over either Fakhry or Edwards under either § 302(a)(1) or § 302(a)(3), and they are properly dismissed from this action.

### B. Soho Square

Plaintiffs argue that the Court has personal jurisdiction over Soho Square under N.Y. C.P.L.R. § 302(a)(1) because the complaint alleges that Soho Square is successor to ESO Partners under the Agreement and, therefore, the Court has personal jurisdiction over ESO Partners based on its negotiation in New York of the Agreement that gave rise to this suit, as well as other engagement in investor meetings and other business in relation to the Agreement and the Fund in New York. Compl. ¶ 21-23, 40-45; see Time Warner Cable, Inc. v. Networks Grp., LLC, 9-CV-10059 (DLC) 2010 WL 3563111, at *5 (S.D.N.Y. Sept. 9, 2010) ("An allegation of successor liability against an entity whose predecessor is subject to personal jurisdiction can provide personal jurisdiction over the successor entity." (citing Libutti v. United States, 178 F.3d 114, 124-25 (2d Cir. 1999))). Whether the Court has personal jurisdiction over Soho Square thus turns on whether the complaint plausibly alleges successor liability as to Soho Square. As

discussed _infra_ in Section II, because the Court finds that the complaint plausibly alleges successor liability under the Agreement as to Soho Square, the Court has personal jurisdiction over Soho Square at this stage.

## C. *Jurisdictional Discovery*

Whether to allow jurisdictional discovery is within the court's discretion. See _Jazini_, 148 F.3d at 186. To the extent plaintiffs seek jurisdictional discovery as to Fakhry and Edwards, the Court denies the request for jurisdictional discovery as unnecessary and irrelevant, since, as discussed further below, the Court also grants the 12(b)(6) motion to dismiss the only counts against Fakhry and Edwards (Counts Three and Five) for failure to state a claim.

## II.    Failure to State a Claim

Soho Square, Fakhry, and Edwards also move to dismiss the claims against them under Rule 12(b)(6) for failure to state a claim, specifically, the claim for breach of contract against Soho Square as successor (Count Two), the claim for tortious interference with contract against Soho Square, Fakhry, and Edwards (Count Three), the claim for unjust enrichment against Soho Square, Fakhry, and Edwards (Count Five), and the request for

a declaratory judgment (Count Six) insofar as it alleges that Soho Square is bound by the Agreement as a successor to ESO Partners.[5]

The Court first addresses the breach of successor claim against Soho Square, then turns to the tortious interference with contract and unjust enrichment claims against all three defendants.

### A. *Breach of Contract as Successor (Count Two)*

Addressing the 12(b)(6) motion to dismiss Count Two involves first, a choice of law question, and second, applying that law to the claim. As to choice of law, the Court finds that New York law applies on this motion-to-dismiss posture. Applying New York law, the Court finds that the complaint sets forth a cognizable breach of contract claim against Soho Square because it pleads sufficient factual allegations to support the "mere continuation" exception to the general rule that a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities.

---

[5]     Plaintiffs are no longer pursuing their claim for breach of duty to creditors of Soho Square (Count Four), acknowledging that defendants are correct that, under applicable English law, a director's duty to consider an insolvent company's creditors extends to the company and not to the creditors. See ECF 29 at 16 n.3.

1.      Choice of Law

Plaintiffs argue that the successor liability claims are subject to New York law because they arise under and relate to the Agreement, which provides that the parties agree that any lawsuits arising out of or relating to the Agreement shall be governed by the laws of the State of New York, "without giving effect to principles of conflicts of law." See Compl. Ex. A. Soho Square counters that the choice-of-law clause in the Agreement cannot bind Soho Square as a non-party to the Agreement, and that instead, New York's interest analysis governs identifying the applicable law, which Soho Square argues would lead the court to apply English law.[6]

The Agreement contains a choice-of-law provision that provides that all lawsuits or disputes arising out of or relating to the Agreement are to be governed by and construed and enforced

---

[6] Soho Square argues that English law bars plaintiffs' successor liability claim because the only way to transfer a payment obligation under a contract is by way of a three-party novation, requiring the consent of all three parties, which the Complaint fails to allege. In other words, Soho Square argues that because it is not a party to the Agreement, and because the complaint fails to identify any novation of ESO Partners' liabilities under the Agreement to Soho Square, that it fails as a matter of English law to set forth a cognizable breach of contract claim against Soho Square. In their briefs, plaintiffs do not respond to the English law argument. However, because, as discussed herein, the Court finds that for purposes of this motion to dismiss, New York law governs, this argument does not, at this stage, dispose of Snowbridge's claims.

in accordance with the laws of New York, "without giving effect to principles of conflicts of law," and that any such lawsuit would be brought exclusively in the federal or state courts located in New York, New York. Compl. ¶¶ 34-35, Ex. A. For purposes of this motion to dismiss, the Court takes the allegations in the complaint, including various claims arising out of the Agreement (attached as an exhibit), as true. Accepting the well-pleaded facts in the complaint as true, this case and this claim arise out of the Agreement and its choice-of-law provision thus governs. New York law thus applies to determining whether the complaint plausibly alleges successor liability as to Soho Square.

> 2.     Applying New York Law

Under New York law, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). Successor liability attaches, however, if the case concerns at least one of four common-law exceptions: "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; [or] (4) a buyer that is a mere continuation of a seller." Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 702 (2d Cir. 2009) (internal quotations and citations omitted);

see also Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244-45 (1983).

Soho Square argues that the complaint fails to set forth a cognizable breach of contract claim against Soho Square under New York law because the complaint does not plead sufficient factual allegations to support any of the four exceptions. Plaintiffs argue that the allegations in the Complaint plausibly support two of the exceptions: that the transfers were intended to defraud Snowbridge as a creditor of ESO Partners, and that Soho Square is a "mere continuation" of ESO Partners. Both are close questions. The Court finds that although the complaint does not contain sufficient factual allegations to plausibly support that there was a fraudulent transfer, the complaint does contain sufficient factual allegations to support the "mere continuation" exception.

  i.   *Fraudulent Transfer*

First, there is a threshold question of what pleading standard applies. Both parties cite various cases on either side of the question of whether Rule 9(b)'s heightened pleading standards apply to the fraudulent transfer theory of successor liability. Cf. Vorcom Internet Services, Inc. v. L & H Engineering And Design LLC, No. 12-CV-2049 (VB) 2013 WL 335717, at *5 (S.D.N.Y. Jan. 9, 2013) ("Additionally, pleadings of successor liability are subject to the lenient pleading requirements of Rule 8(a), not the more

-31-

rigorous standards of Rule 9(b)." (internal citations and quotation marks omitted)) <u>with</u> <u>Knopf v. Meister, Seelig & Fein, LLP</u>, No. 15-CV-5090 (DLC), 2016 WL 1166368, at *6 (S.D.N.Y. Mar. 22, 2016), aff'd 721 F. App'x 96 (2d Cir. 2018) ("Because a claim [of actual fraudulent conveyance under N.Y. Debt. & Cred. Law § 276] sounds in fraud, it must satisfy the heightened pleading standards of Rule 9(b)."); <u>see also</u> <u>Qingdao Tangbo Garments Co., Ltd. v. PRG Nouveau, LLC</u>, No. 17-CV-6992 (PKC) 2020 WL 1435218, at *3 (S.D.N.Y. Mar. 24, 2020) ("Qingdao's claim of fraudulent transfer under section 276 of the New York Debtor and Creditor Law requires allegation of an intent to defraud a creditor on the part of a transferor, which must be pleaded with the particularity required of Rule 9(b)."). Because the cases applying Rule 9(b)'s pleading standards do not discuss successor liability specifically, the cases might be read to implicitly suggest that Rule 8(a)'s pleading standards apply here; but in any event, the allegations in the complaint do not satisfy even Rule 8(a).

In determining whether a fraudulent conveyance occurred, courts look to factors such as "(1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) transferor's knowledge of the creditor's claims and the transferor's inability to pay it; (5) the use of fictitious

-32-

parties; and (6) retention of control of the property by the transferor after the conveyance." <u>A.G. Glob. Consulting Inc. v. GlobalOptions Grp., Inc.</u>, No. 10-CV-3832 (JSR), 2010 WL 11712993, at *2 (S.D.N.Y. Oct. 26, 2010).

The complaint does not allege sufficient facts to support the fraudulent conveyance exception. The complaint alleges a very close relationship among the parties to the transaction: that both were entities within the ESO Capital Group, that they shared directors or managers, and that they shared business, including on the Fund that is the subject of the Agreement at issue in this case. Compl. ¶¶ 5, 7, 19-20, 42. The complaint also alleges that Soho Square knew of Snowbridge's claim: that Soho Square had actual knowledge of the Agreement and its provisions, because Soho Square merged into the ESO Capital Group, Fakhry and Edwards were involved with the Agreement, Soho Square had its own role as the Fund's AIFM, and Soho Square assumed management of the Fund from ESO Partners, retaining substantially the same management team, and carried on ESO Partners' business. <u>Id.</u> ¶¶ 73-77. The complaint also alleges broadly that the transfer "was intended . . . to defraud Snowbridge as a creditor of ESO Partners by rendering it effectively judgment-proof." <u>Id.</u> ¶ 76.

However, the complaint contains no allegations whatsoever as to the inadequacy of consideration, the use of fictitious parties,

or the retention of control of the property by the transferor after the conveyance. Neither does the complaint allege a transfer that was secret, hasty, or not in the usual course of business, even where it alleges that the transfer left ESO Partners with "minimal assets" while Soho Square rebranded itself. Id. ¶ 52.

Accordingly, the Court concludes that the factual allegations in the complaint are not sufficient to support the fraudulent conveyance exception, even under the more lenient standards of Rule 8(a).

### i.   *Mere Continuation*

The "mere continuation" exception "refers to a continuation of the selling corporation in a different form, and not merely to a continuation of the seller's business." Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 95 (S.D.N.Y. 2002), aff'd 352 F.3d 41 (2d Cir. 2003) (alterations omitted). The exception "envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer." SungChang Interfashion Co., Ltd. v. Stone Mountain Accessories, Inc., No. 12-CV-7280 (ALC DCF) 2013 WL 5366373, at *16 (S.D.N.Y. Sept. 25, 2013) (internal quotation marks and alterations omitted).

Soho Square argues that the "mere continuation" exception is inapplicable for two reasons: because ESO Partners was not

-34-

dissolved, and because plaintiffs acknowledge that the exception is only available where there is a common identity of ownership or control persons between the two entities.[7]

As for whether ESO Partners was dissolved, the complaint does not allege that it has been dissolved; plaintiffs argue instead that dissolution is not necessary for the "mere continuation" exception to apply. See SungChang, 2013 WL 5366373, at *16 ("Even though SungChang has not alleged formal dissolution, this defect is not detrimental as the mere continuation exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors so that if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." (internal alterations, quotation marks, and citations omitted)).

The chain of cases cited by plaintiffs rely on pleadings that alleged that the same assets, goodwill, employees, offices,

---

[7]   Soho Square further argues that the "mere continuation" exception is only available where there is a common identity of ownership or control persons between the two entities, and that there is no such common identity of ownership or control persons here. Taking the well-pleaded facts in the complaint as true, however, there is. Soho Square relies on materials outside of the complaint and the Agreement attached as an exhibit to argue that there is not common identity of ownership or control persons between the two entities. For purpose of the 12(b)(6) motion, the court does not consider such extrinsic materials.

telephone number, address, and management were maintained in the transfer; Snowbridge's pleadings here allege the same, if in a general fashion. Compl. ¶¶ 73-77. Soho Square relies on a separate line of cases to argue that actual dissolution of ESO Partners is required. See Schumacher, 59 N.Y.2d at 245 ("Since Richards Shear survived the instant purchase agreement as a distinct, albeit meager, entity, the Appellate Division properly concluded that Logemann cannot be considered a mere continuation of Richards Shear."); see also Cargo Partner AG, 207 F. Supp. 2d at 96 ("In Schumacher, the New York Court of Appeals made clear that [the 'mere continuation' exception] requires actual dissolution of the seller . . . . [T]he absence of an allegation as to the dissolution of Chase Leavitt is dispositive . . . .").

In reconciling these two lines of cases, courts have considered whether the complaint alleges that the successor entity was created for the purpose of avoiding liability, and whether the factual allegations in the complaint make such an allegation plausible. See, e.g., Hayden Capital USA, LLC v. Northstar Agri Industries, LLC, No. 11-CV-594 (DAB) 2012 WL 1449257, at **7-9 (S.D.N.Y. Apr. 23, 2012). If the complaint plausibly alleges sufficient facts to support the "mere continuation" exception and alleges that the successor entity was created for the purpose of avoiding liability, then it survives a motion to dismiss. See id.

Here, plaintiffs' complaint does that. The complaint alleges that Soho Square merged into the ESO Capital Group and took on the role as the Fund's AIFM, that Soho Square assumed management of the Fund from ESO Partners, and that Soho Square retained substantially the same management team and carried on ESO Partners' business. Compl. ¶¶ 73-77. The complaint further alleges that the transfer left ESO Partners with "minimal assets" while Soho Square rebranded itself. Id. ¶ 52. These factual allegations support plaintiffs' broader allegation that the transfer "was intended . . . to defraud Snowbridge as a creditor of ESO Partners by rendering it effectively judgment-proof." Id. ¶ 76.

Accordingly, the Court finds that Snowbridge's complaint contains sufficient factual allegations to support the "mere continuation" exception and denies Soho Square's motion to dismiss Count Two.

### B. *Tortious Interference with Contract (Count 3)*

Tortious interference with contract "requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (N.Y. 1996); see also Shear Enters., LLC v.

-37-

Cohen, 189 A.D.3d 423, 424 (1st Dep't 2020) (internal quotation marks and citation omitted). To state a claim for tortious interference with contract, a plaintiff must also allege "that the contract would not have been breached 'but for' the defendant's conduct." Burrowes v. Combs, 808 N.Y.S.2d 50, 53 (1st Dep't 2006).

Defendants argue that the complaint fails to allege that the conduct of Soho Square, Fakhry, or Edwards has anything to do with the alleged breach of ESO Partners; more specifically, defendants argue that the complaint fails to allege either conduct by Soho Square, Fakhry, or Edwards constituting the but-for cause of ESO Partners' breach, or that these defendants intended to procure ESO Partners' breach of the Agreement without justification.

Plaintiffs' response is to state conclusorily (without citation to the complaint) that the complaint "plainly alleges" that the defendants "intentionally procured ESO Partners' breach of the Agreement." ECF No. 29 at 20. This is not a winning argument. The complaint only recites the elements of the cause of action, see Compl. ¶ 82, which is insufficient to survive a 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 557. The only facts alleged in the complaint that connect Soho Square, Fakhry, or Edwards to the alleged breach (besides the allegation that ESO Partners "assigned a substantial portion of its business and assets to [Soho Square], including its interests and role as manager of the Fund,"

Compl. ¶ 54), are that Fakhry and Edwards were copied on Schmid's December 30, 2020 email responding to Snowbridge's request that ESO Partners pay the overdue advisory fees and to discuss the placement fee, stating that "[w]e will come back to you early in the new year with a proper response." Compl. ¶ 51. Being copied on such an email is not a sufficient factual allegation to support that Soho Square's, Fakhry's, or Edwards's conduct was the but-for cause of ESO Partners' breach, or that these defendants intentionally procured ESO Partners' breach.

Accordingly, the Court grants the 12(b)(6) motion to dismiss Count Three because the complaint lacks sufficient allegations that Soho Square's, Fakhry's, or Edwards's conduct was the but-for cause of ESO Partners' breach, or that these defendants intentionally procured ESO Partners' breach.[8]

---

[8]    Defendants further argue that plaintiffs have "pleaded themselves out" of their tortious interference claim by alleging facts that establishing two separate and complete defenses to the claim: New York's "stranger rule" and the "economic interest doctrine." Because granting defendants' 12(b)(6) motion to dismiss is warranted based on the complaint's lack of sufficient allegations that Soho Square's, Fakhry's, or Edwards's conduct was the but-for cause of ESO Partners' breach, or that these defendants intentionally procured ESO Partners' breach, the Court need not resolve whether dismissing the claim on these alternative grounds is appropriate.

### C. *Unjust Enrichment (Count Five)*

"To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Mount v. Pulse Point, Inc., 684 F. App'x. 32, 36 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted). "Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal." Mandarin Trading Ltd., v. Wildenstein, 16 N.Y.3d 173, 183 (N.Y. 2011).

Defendants argue that Snowbridge's complaint has failed to allege either the first or second element of an unjust enrichment claim. To meet the first element, "a plaintiff must show that the defendant actually received a benefit," which "must be both 'specific' and 'direct.'" Regnante v. SEC Off., 134 F. Supp.3d 749, 772 (S.D.N.Y. 2015) (dismissing unjust enrichment claim where plaintiffs failed to plead that defendant was actually enriched and only alleged that future benefits might accrue to defendant). The complaint alleges that Snowbridge provided "valuable advisory and other services under the Agreement" from which Soho, Fakhry, and Edwards "benefitted." Compl. ¶ 89. Defendants argue that the

complaint fails to allege how Snowbridge's services directly benefited Soho, Fakhry, or Edwards, who were not parties to the Agreement. The complaint's vague allegation is not sufficient to make out a benefit.

To satisfy the claim's second element, a plaintiff must show how such a benefit was at its expense. But while the complaint describes how ESO Partners failed to pay Snowbridge, Compl. ¶¶ 1, 48-50, it does not allege any affirmative acts by Soho Square, Fakhry, or Edwards that would have prevented Snowbridge from being paid. The only connection that the complaint makes between Snowbridge not being paid and Soho Square, Fakhry, or Edwards is the fact that Fakhry and Edwards were copied on an email that the head of ESO Partners sent to Snowbridge in December 2020. Id. ¶ 5.

Plaintiffs' entire argument consists of two sentences: "Defendants argue counterfactually that the Complaint does not allege that they received any specific benefit at Snowbridge's expense. As discussed above, that is precisely what is alleged." ECF No. 29 at 22 (internal citation omitted). Plaintiffs provide no citations to the complaint or specific responses to defendants' arguments. It is not enough for plaintiffs to rely on their general theory (as discussed above) that ESO Partners transferred its business assets to Soho Square (allegedly instead of using them to pay the fees to Snowbridge), leaving ESO Partners an empty shell

with negligible assets and insulating Soho Square from liability, and that Soho Square, Fakhry, and Edwards where thus unjustly enriched at Snowbridge's expense. Without more specific factual allegations, the complaint does not make out an unjust enrichment claim, and granting the motion of Soho Square, Edwards, and Fakhry to dismiss Count Five against them is therefore required.

### D. Declaratory Judgment (Count Six)

Soho Square argues that insofar as the declaratory judgment claim asks for a declaration that "ESO Advisors [Soho Square] is bound by the Agreement as successor to ESO Partners thereunder and therefore is obligated to plaintiffs to pay the minimum Placement Fee and other amounts due thereunder," Compl. ¶ 95, this is identical to those in the breach of contract as successor claim, Compl. ¶ 79. Because, as discussed above, the Court finds that it has personal jurisdiction over Soho Square and denies Soho Square's 12(b)(6) motion to dismiss Count Two, the Court also denies the motion to dismiss Count Six as to Soho Square.

### III.   Leave to Amend Complaint

Plaintiffs, perhaps anticipating some of the difficulties with the sufficiency of their allegations, request leave to replead to the extent any of Soho Square's, Fakhry's, or Edwards's challenges have merit. See ECF No. 29 at 22-23. To save its claims

-42-

as to Fakhry or Edwards, plaintiffs would need to add sufficient factual allegations to allege personal jurisdiction over Fakhry or Edwards and to make out a tortious interference with contract or unjust enrichment claim as to either defendant; as to Soho Square, plaintiffs would need to add sufficient factual allegations to make out a tortious interference with contract or unjust enrichment claim.

The only factual allegation plaintiffs cite in their papers that they would add if given leave to replead concerns the allegations of successor liability against Soho Square. See ECF No. 29 at 23. When asked directly by the Court at oral argument what specific factual allegations would be added to an amended complaint, if given leave to replead, plaintiffs were unable to cite a single factual allegation that they would add as to personal jurisdiction over Fakhry or Edwards, or as to the tortious interference with contract or unjust enrichment claims as to any of the defendants. Accordingly, the Court denies plaintiffs' request for leave to amend these claims as futile.

## CONCLUSION

For the foregoing reasons, the Court reaffirms its Order of March 3, 2022 that granted the 12(b)(1) motion to dismiss the claims against Fakhry and Edwards for lack of personal

jurisdiction; dismissed Counts Three and Five against Fakhry, Edwards, and Soho Square for failure to state a claim; and denied, Soho Square's motion to dismiss Count Two on either 12(b)(2) or 12(b)(6) grounds. The Clerk is directed to close the entry at docket number 26.

      SO ORDERED.

Dated:    New York, NY

          March 7, 2022

                                       JED S. RAKOFF, U.S.D.J.