UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
SNOWBRIDGE ADVISORS LLC et al.,      :
                                     :
     Plaintiffs,                     :
                                     :        21-cv-9086 (JSR)
          -v-                        :
                                     :        MEMORANDUM ORDER
ESO CAPITAL PARTNERS UK LLP et al., :
                                     :
     Defendants.                     :
---------------------------------- x

JED S. RAKOFF, U.S.D.J.

     Now before the Court are the motions of defendants ESO Capital
Partners UK LLP ("ESO Partners") and Soho Square Capital LLP ("Soho
Square") to dismiss plaintiffs' claims against them for lack of
subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for
failure to state a claim upon which relief can be granted under
Fed. R. Civ. P. 12(b)(6). ECF Nos. 37 and 39. The motions were
fully briefed and the Court heard oral argument, after which it
granted plaintiffs leave to file an additional sur-reply.

     As the Court stated by "bottom-line" order dated March 28,
2022, see ECF No. 61, the Court grants both motions and dismisses
the complaint. The claims of plaintiff Snowbridge Advisors LLC for
breach of contract against ESO Partners and for breach of contract
against Soho Square as successor are dismissed for lack of subject
matter jurisdiction. The claims of plaintiff Snowbridge Securities

LLC for breach of contract against ESO Partners and for breach of contract against Soho Square as successor are dismissed for lack of standing. The Court also grants the motions of ESO Partners and Soho Square to dismiss Count Six because the request for a declaratory judgment is duplicative of the claims for breach of contract and for breach of contract as successor in Counts One and Two, and a declaratory judgment would not serve a useful purpose to clarify the legal issues involved or otherwise finalize the controversy or offer relief from uncertainty. This Memorandum Order sets forth the reasons for these rulings.

## BACKGROUND

Unless otherwise indicated, the following factual allegations are taken from the complaint. See ECF No. 1.

The Parties

Co-plaintiff Snowbridge Advisors LLC, a financial advisory and placement firm, is a Delaware limited liability company with a principal place of business in New York City. Compl. ¶ 2. In September 2019, Snowbridge Advisors formed co-plaintiff Snowbridge Securities LLC and transferred its securities transactions to Snowbridge Securities. Id. ¶ 22. Snowbridge Securities, a broker-dealer firm registered with the SEC and a FINRA member, is a Delaware limited liability company with a principal place of

business in New York City. Id. ¶ 3.

Defendant ESO Capital Partners UK LLP ("ESO Partners"), an investment management firm, is a limited liability partnership organized under the laws of England and Wales. Id. ¶¶ 4, 18. ESO Partners is registered as an investment advisor with the SEC and is a member of the ESO Capital Group of companies. Id. "Upon information and belief," in or around May 2018, ESO Partners acquired Soho Square Capital LLP ("Soho Square," then known as Core Capital Partners LLP). Id. ¶ 19.

Defendant Soho Square, a UK-based lower mid-market private equity fund, is a limited liability partnership organized under the laws of England and Wales. Id. ¶ 5. Soho Square is registered as an investment advisor with the SEC and has been at the relevant times a member of the ESO Capital Group. Id. Soho Square was previously known as Core Capital Partners LLP, renamed ESO Capital Advisors LLP in December 2020, and in October 2021 renamed Soho Square Capital LLP. Id. ¶¶ 5, 19-20. According to the complaint, Soho Square was founded in 2005. Id. ¶ 19. Soho Square, at the time known as Core Capital, was designated in ESO Partners' SEC filings as the Fund's Alternative Investment Fund Manager ("AIFM"). Id. ¶ 42.

The Agreement

According to the complaint, Snowbridge Advisors, DCS Advisory

LLC,[1] and ESO Partners entered into a letter agreement (the "Agreement") on October 1, 2018, in connection with the proposed private placement of interests in European Special Opportunities Fund VII and any parallel, feeder, or alternative investment vehicles of European Special Opportunities Fund VII (collectively, the "Fund"). Id. ¶ 21.[2]

According to the complaint, ESO Partners engaged Snowbridge Advisors and DCS Advisory to serve as ESO Partners' exclusive financial advisor worldwide and exclusive placement agent in North America in connection with the Fund, which would be managed by ESO Partners. Id. ¶ 21. However, examining the actual Agreement (attached as an exhibit to the complaint), casts this in a different light. The Agreement is signed by ESO Partners, DCS Advisory, and Snowbridge Advisors LLC. Ex. A at 13. The language of the Agreement provides that DCS Advisory is the exclusive financial advisor and placement agent in connection with the Fund, refers to "the term of DCS Advisory's engagement hereunder," and

---

[1]    About a year after the Agreement was executed, in September 2019, Snowbridge Advisors formed Snowbridge Securities; according to the complaint, on September 12, 2019, DCS's rights and obligations under the Agreement were assigned to and assumed by Snowbridge Securities. Id. ¶ 22. Plaintiffs include a letter that they refer to as the assignment letter as part of Exhibit A to the complaint.

[2]    A copy of the Agreement is attached to the complaint as Exhibit A.

outlines the services provided by DCS Advisory in connection with its engagement. Id. In reference to Snowbridge Advisors, the Agreement states that "members of Snowbridge Advisors . . . will participate in the offering as associated persons of DCS Advisory, and, however, for the avoidance of doubt, no Securities will be placed through Snowbridge." Id.

According to the complaint, under the Agreement, ESO Partners agreed to compensate "Snowbridge" by paying an initial work fee of €300,000, a monthly advisory fee of €30,000, and a minimum placement fee, as well as interest on the unpaid balance of the placement fee. Compl. ¶¶ 28-29. Again, however, looking at the actual Agreement, the compensation language refers to DCS Advisory, not Snowbridge Advisors. Section 1 of the Agreement refers to the services that "DCS Advisory, using commercially reasonable efforts, will provide . . . ." Ex. A at 2-3. Section 2 of the Agreement provides for compensation and states that "[a]s compensation for the services to be provided by DCS Advisory," ESO Partners "agrees to pay DCS Advisory" a work fee, advisory fee, and placement fee. Id.

By contrast, the Agreement elsewhere refers expressly to "Snowbridge Advisors," including in reference to the "term of DCS Advisory's and Snowbridge's engagement hereunder" and in reference to "Snowbridge's and DCS Advisory's respective roles" in the

-5-

transaction contemplated by the Agreement. Id. at 9.

The Agreement further provides that all lawsuits or disputes arising out of or relating to the Agreement will be governed by, and construed and enforced in accordance with, the laws of New York, "without giving effect to principles of conflicts of law," and that any such lawsuit will be brought exclusively in the federal or state courts located in New York, New York. Compl. ¶¶ 34-35. The Agreement also includes a jury waiver. Id. ¶ 36.

Under the Agreement, the Agreement cannot be amended, modified, or waived except by a written instrument signed by DCS Advisory, Snowbridge, and ESO Partners. Id. ¶ 37; Ex. A at 12.

According to the complaint, and consistent with the language of the Agreement, the Agreement also provides that it "shall be binding upon DCS Advisory, Snowbridge, [ESO Partners] and the Fund and their respective successors and assigns and any successor or assign of any substantial portion of [ESO Partners'], the Fund's and DCS Advisor's respective businesses and/or assets" and that ESO Partners' obligations under the Agreement are joint and several with the Fund. Id. ¶¶ 38; Ex. A at 12.

Notwithstanding this, however, "neither [ESO Partners] nor the Fund may assign or otherwise transfer any of its rights and obligations under this Agreement without the prior written consent of Snowbridge and DCS Advisory and any purported assignment or

other transfer of any such rights and obligations without such consent shall be null and void; provided, that [ESO Partners], the Fund, Snowbridge [Advisors] and DCS Advisory acknowledge and agree that Snowbridge [Advisors] shall have the right to assign the rights and obligations under this Agreement to (i) a fully licensed broker-dealer affiliated with Snowbridge [Advisors] in Snowbridge's sole discretion, or (ii) another broker dealer with the written consent of the Company, not to be unreasonably withheld." Ex. A at 12. Under the Agreement, ESO Partners also assumes an express obligation to cause the Fund to be joined as an additional party to the Agreement. Compl. ¶ 39.[3]

The complaint alleges that in September 2019, "Snowbridge Advisors formed Snowbridge Securities and transferred its security transactions from DCS Advisory to Snowbridge Securities," and that on September 12, 2019, "DCS Advisory's rights and obligations under the Agreement were assigned to and assumed by Snowbridge Securities." Id. ¶ 22. The complaint alleges that "[a] true copy of the executed assignment is annexed to the Agreement submitted as Exhibit A hereto." Id. The document annexed to the Agreement is titled "Notice of Engagement Agreement Assignment," is addressed

---

[3]    According to the complaint, however, ESO Partners refused to cause the Fund to be jointly and severally obligated under the Agreement, which Snowbridge alleges was required by the Agreement. Id. ¶ 49.

to ESO Capital Partners UK LLP with a "cc: DC Advisory" caption at the bottom, and is signed only by Snowbridge Advisors. It notes that "[u]nder Section 13 of the Agreement, Snowbridge may assign the rights and obligations of DC to another fully licensed broker dealer affiliated with Snowbridge." Id. It further provides that Snowbridge Advisors recently formed Snowbridge Securities and "is transitioning its securities transactions from DC to SBS." Id. More specifically, "[e]ffective September 12, 2019, Snowbridge assigned the rights and obligations of DC under the Agreement to SBS and SBS assumed all of DC's rights and obligations under the Agreement." Id.

ESO Partners' Alleged Breach

According to the complaint, Snowbridge devoted substantial resources to identifying and working to place investors in the Fund, performing at high standards, and going well beyond the scope of the Agreement. Id. ¶¶ 40-41. According to the complaint, ESO Partners' failure to reach its first closing target, the refusal of its existing investors to recommit to the fund, and the poor investment performance of ESO Partners' prior funds turned off potential investors, and, as a consequence, through no fault of Snowbridge, it could not attract any new investors to the fund. Id. ¶¶ 45-46. Also according to the complaint, at no time did ESO Partners provide notice to Snowbridge of ESO Partners' intent to

-8-

terminate the Agreement or suggest that there might be cause for termination. Id. ¶ 47.

ESO Partners made initial payments to Snowbridge pursuant to the Agreement, including the initial work fee of €300,000 and the monthly advisory fee of €30,000, which ESO Partners paid for 14 months, through November 2019. Id. ¶ 48. In March 2020, because of the COVID-19 pandemic, Snowbridge offered to temporarily suspend ESO Partners' payments of the monthly advisory fee beginning April 1, 2020, conditioned on ESO Partners paying the overdue payments since November 2019. Id. ¶ 50. Snowbridge sent an invoice for the overdue advisory fees from the previous four months; ESO Partners did not respond. Id. As of May 2020, ESO Partners stopped responding altogether to Snowbridge's communications, including requests for payment.

In a letter dated December 4, 2020, in light of the anticipated final closing of the Fund that month, Snowbridge asked ESO Partners for payment of the overdue invoice for the unpaid advisory fees and to discuss the placement fee, regarding which Snowbridge wished "to discuss a plan, beneficial and fair to both parties." Id. ¶ 51. On December 30, 2020, the CEO of ESO Partners replied by email, stating, inter alia, "We will come back to you early in the new year with a proper response." Id. The CEO of ESO Partners then responded to Snowbridge in a letter dated January

-9-

29, 2021, asserting that Snowbridge had failed to perform its obligations under the Agreement, threatening to countersue Snowbridge in the event that Snowbridge took action to pursue payment from ESO Partners, and asserting that ESO Partners had "negligible assets." Id. ¶ 52.

"[U]pon information and belief," by the time the CEO of ESO Partners wrote to Snowbridge that ESO Partners had "negligible assets," Core Capital Partners had changed its name to ESO Capital Advisors (later to be renamed Soho Square), and a number of ESO Partners' management team had moved over to and begun working directly for ESO Advisors (later to be renamed Soho Square), which had already been directly involved in the Fund as its designated AIFM. Id. ¶ 53. Also "upon information and belief," ESO Partners "assigned a substantial portion of its business and assets to its affiliate [Soho Square (then called ESO Advisors)], including its interests and role as manager of the Fund." Id. ¶ 54.

In its public regulatory filings in the UK, ESO Partners represented itself as a going concern, including stating in its 2020 Annual Report that ESO Capital Group "have the ability and the intention to support ESO Capital Partners UK LLP for the foreseeable future." Id. ¶ 55. ESO Advisors (later renamed Soho Square) filed its own 2020 Report, stating substantially the same. Id. ¶ 56.

The ESO Partners 2020 Annual Report and the Annual Report for its parent entity ESO Capital UK Limited contained substantially identical descriptions of the €3 million minimum placement fee due to Snowbridge, stating that "[t]o date there has been no communication with regards to any further costs, and as such the directors do not believe a provision is necessary and consider this to be a contingent liability." Id. ¶ 57. According to the complaint, the quoted sentence is not true, because the CEO of ESO Partners had already been communicating with Snowbridge regarding payments due from ESO Partners under the agreement, and that ESO Partners thus wrongly justified their failure to set aside a reserve provision for it. Id. ¶ 58.

Snowbridge Advisors and Snowbridge Securities filed their complaint in this Court on November 3, 2021. ECF No. 1. ESO Partners and Soho Square filed their motions to dismiss on January 30 and February 4, respectively. ECF Nos. 37 and 39. After the motion was fully briefed, the Court heard oral argument, at which the Court granted plaintiffs leave to file an additional sur-reply, which plaintiffs then did. ECF No. 58.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted, the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).

In considering a facial challenge under Rule 12(b)(1) to standing, the court reviews only the complaint and exhibits annexed thereto, Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam), and accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction, Keswani v. Sovereign Jewelry Inc., No. 20-CV-8934 (KPF), 2021 WL 4461332, at *4 (S.D.N.Y. 2021). However, if an allegation is flatly contradicted by an annexed

exhibit, it is not plausible and should be disregarded. Amidax,
671 F.3d at 145.

If a defendant makes a fact-based Rule 12(b)(1) motion and
proffers evidence beyond the pleadings, a plaintiff must come
forward with evidence of their own to controvert that presented
by the defendant. See Carter v. HealthPort Techs., LLC, 822 F.3d
47, 57 (2d Cir. 2016).

## DISCUSSION

The Court first addresses defendants' motions to dismiss all
the claims brought by plaintiff Snowbridge Advisors and finds that
it lacks subject matter jurisdiction over Snowbridge Advisors'
claims for breach of contract against ESO Partners and for breach
of contract against Soho Square as successor. The Court then
addresses defendants' motions to dismiss the claims of plaintiff
Snowbridge Securities and finds that Snowbridge Securities lacks
standing to bring its claims for breach of contract against ESO
Partners and for breach of contract against Soho Square as
successor. Finally, the Court turns to Count Six, the declaratory
judgment claim, and finds it duplicative of the breach of contract
and breach of contract as successor claims in Counts One and Two.
Accordingly, the Court grants the motions and dismisses the
complaint.

-13-

## I. Snowbridge Advisors' Claims

Under New York law, to survive a motion to dismiss a breach of contract claim, a complaint must adequately allege "(1) the existence of a contract between [the plaintiff] and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).

ESO Partners argues that Snowbridge Advisors fails to state a claim for relief against ESO Partners on either potential breach of the Agreement: failure to pay the placement fee or failure to join the Fund. First, ESO Partners argues that the language of the Agreement clearly and unambiguously provides that the placement fee be paid to DCS Advisory, not Snowbridge Advisors. Second, ESO Partners argues that Snowbridge Advisors did not plead any harm it suffered as a result of ESO Partners' alleged failure to have the Fund execute a joinder to the agreement. ESO Partners then argues that, even assuming that Snowbridge Advisors has made out a breach of contract claim based on ESO Partners' alleged failure to join the Fund, the damages from such a breach do not satisfy the amount in controversy requirement for purposes of subject matter jurisdiction.

Snowbridge Advisors concedes that it is not due the placement fee under the Agreement, but rather, the fee was due to DCS Advisory. See ECF No. 44 at 15. As to joining the fund, Snowbridge Advisors argues that it is entitled to nominal damages for failure to join the Fund. But nominal damages cannot survive the amount in controversy requirement for purposes of diversity jurisdiction. See Schwartz v. Hitrons Sols, Inc., 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (noting that plaintiffs bear the burden of "proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount"); see also Zahn v. Int'l Paper Co., 414 U.S. 291, 300 (1973) (holding that where multiple plaintiffs assert "separate and distinct claims," each must satisfy the jurisdictional amount requirement to survive a motion to dismiss).

Even assuming arguendo that Snowbridge Advisors' assertion that it is entitled to nominal damages for ESO Partners' failure to join the Fund is sufficient to survive a 12(b)(6) motion, Snowbridge Advisors does not meet its burden to allege a quantity of damages sufficient to satisfy the amount in controversy requirement for purposes of diversity jurisdiction.[4] Neither do

---

[4]    Because the Court does not have subject matter jurisdiction over Snowbridge Securities' claims, as discussed further below, there is no question of exercising supplemental jurisdiction over Snowbridge Advisors' claims.

-15-

they argue that they could do so if given leave to replead. Accordingly, the Court dismisses Snowbridge Advisors' breach of contract claim against ESO Partners and Snowbridge Advisors' breach of contract claim against Soho Square as successor for lack of subject matter jurisdiction.

## II.   Snowbridge Securities' Claims

To establish Article III standing, a plaintiff must show a concrete, particularized, and actual or imminent injury, that is traceable to the defendant's conduct, and that is likely to be redressed by a favorable decision. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The party that seeks to invoke federal jurisdiction bears the burden of establishing Article III standing. Id. at 561.

ESO Partners argues that Snowbridge Securities lacks standing (and has not established an injury traceable to the defendants' conduct) because it is not a party to the Agreement. ESO Partners further argues that the complaint does not plausibly allege that DCS Advisory assigned its rights under the Agreement to Snowbridge Securities because Snowbridge Securities did not exist at the time of the purported assignment, and even if did, based on the language of the Agreement, the purported assignment cannot be valid.

First, ESO argues, in a fact-based challenge to standing,

-16-

that Snowbridge Securities did not exist at the time of the purported assignment, and so no valid assignment of DCS Advisory's rights could have occurred.

As an initial matter, the Court can take judicial notice of publicly available documents outside the complaint and attached exhibits when considering a fact-based challenge to standing and subject matter jurisdiction. See Carter, 822 F.3d at 57. In opposition to such a fact-based challenge, Snowbridge Securities must come forward with its own evidence to controvert that presented by the defendant. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001).

A New Jersey LLC "Snowbridge Securities LLC" was formed on September 13, 2018 and has been an SEC-registered broker-dealer firm since September 4, 2019. See ECF No. 42-2 (Ex. B) at 1, 2, 7. Plaintiffs assert that this entity was the assignee on September 12, 2019 that received DCS Advisory's interest in the Agreement. The complaint, however, does not mention a New Jersey entity; the complaint provides that plaintiff Snowbridge Securities LLC is a Delaware LLC; this entity was incorporated on August 12, 2021, ECF No. 30-1 at 2. Plaintiffs assert that on or about August 25, 2021, the New Jersey Snowbridge entity was merged into the Delaware Snowbridge entity. See Schroeder Decl., ECF No. 32 ¶ 12. Plaintiff attached to its sur-reply a copy of the relevant merger agreement.

-17-

ECF No. 59-1. In so doing, Snowbridge Securities came forward with evidence sufficient, for purposes of this motion to dismiss, that the Delaware Snowbridge Securities entity received any interest that the New Jersey Snowbridge Securities entity had in the Agreement, and thus meets its burden to controvert ESO Partners' fact-based challenge to its standing to sue under the Agreement.

Setting aside this fact-based challenge, however, ESO Partners also mounts a facial challenge to the rights the New Jersey Snowbridge Securities entity could have been or was assigned under the Agreement in the first place. In considering this facial challenge, the Court is confined to review of the complaint and attached Agreement. See Amidax Trading Grp., 671 F.3d at 145.

Based on this review, and as discussed below, the Court finds that the complaint does not plausibly allege that DCS Advisory assigned its rights under the Agreement to the New Jersey Snowbridge Securities entity because the language of the Agreement unambiguously precludes any such assignment of DCS Advisory's rights under the Agreement from being valid. The Court accordingly dismisses Snowbridge Securities' claims for lack of standing.

As a matter of contract law, Snowbridge Advisors cannot assign DCS Advisory's right to payment under the contract to a third party because Snowbridge Advisors did not possess that right in the first place -- DCS Advisory did. See, e.g., BNP Paribas Mortg. Corp. v.

-18-

<u>Bank of Am., N.A.</u>, 949 F. Supp. 2d 486, 502 (S.D.N.Y. 2013) ("[A]n
assignor may not in the first place confer any greater rights than
at the time of such assignment he had himself."); <u>see also</u>
<u>Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.</u>, 790
F.3d 411, 418 (2d Cir. 2015) ("To assign a claim effectively, the
<u>claim's owner</u> must manifest an intention to make the assignee the
owner of the claim." (emphasis added)). The complaint does not
allege that DCS Advisory executed an assignment.

Snowbridge Advisors argues instead that the language of the
Agreement allows Snowbridge Advisors to execute such an
"assignment," because while the Agreement requires ESO Partners or
the Fund to obtain prior written consent of Snowbridge and DCS
Advisory before assigning its rights or obligations under the
Agreement, it states that all parties "acknowledge and agree that
Snowbridge [Advisors] shall have the right to assign the rights
and obligations under this Agreement to (i) a fully licensed
broker-dealer affiliated with Snowbridge in Snowbridge's sole
discretion, or (ii) another broker dealer with the written consent
of the Company, not to be unreasonably withheld." Ex. A at 12.

Snowbridge Advisors argues that this language constitutes the
prior agreement of all parties to give Snowbridge Advisors sole
discretion to assign the broker-dealer's rights under the
Agreement (<u>i.e.</u>, DCS Advisory's rights) to another broker-dealer,

because, according to Snowbridge Advisors, the only reasonable interpretation is that DCS Advisory and ESO Partners agreed in advance that Snowbridge Advisors could assign DCS Advisory's role to Snowbridge Advisors' own affiliated broker-dealer firm once it had one. Snowbridge Advisors asserts that because at the time the parties entered into the Agreement, Snowbridge Advisors anticipated having an affiliated broker-dealer, it reserved its ability to transfer the broker-dealer rights and obligations under the Agreement from DCS Advisory to its affiliated broker-dealer.

But it would utterly ignore the meaning of the word "assignment" to interpret the contract language to allow Snowbridge Advisors to "assign" the rights of another party, DCS Advisory, without the consent of DCS Advisory. Furthermore, Snowbridge Advisors' interpretation of the language is illogical given the overall structure of the Agreement, which provides for a substantial role for DCS Advisory in contrast to a quite minimal role for Snowbridge Advisors. The Agreement is on DCS Advisory letterhead, it refers to services that DCS Advisory was to provide, and accounts for compensation DCS Advisory was to receive. An interpretation that would give Snowbridge Advisors a disproportionately outsized right in comparison to DCS Advisory is illogical in the context of the entire Agreement.

The Agreement's language regarding assignments is instead

-20-

reasonably interpreted as requiring that, if Snowbridge Advisors were to assign _its_ interest under the Agreement, it had to be to a licensed broker-dealer. To provide some of the services outlined in Section 1 of the Agreement, each contracting party was required to be either a licensed broker-dealer or an "associated person" of a licensed broker-dealer under the FINRA regulatory scheme. While members of Snowbridge Advisors were registered as associated persons with DCS Advisory at the time the Agreement was entered into, requiring any assignee of Snowbridge Advisors to be a licensed broker-dealer would obviate the requirement that the assignee be an associated person of DCS Advisory. The language Snowbridge Advisors points to thus allows an assignment _of Snowbridge Advisors' role in the Agreement_ to be in Snowbridge Advisors' sole discretion, but not any such assignment of DCS Advisory's role in the Agreement.

If the language of the assignment provision were ambiguous, dismissal at the motion to dismiss stage on this ground would be inappropriate. See Bank of New York Tr., N.A. v. Franklin Advisors, Inc., 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007). But under any logical interpretation of the language of the Agreement, Snowbridge Advisors cannot assign the rights of a third-party without their consent. Snowbridge Securities thus lacks standing to bring any claims under the Agreement because the language of

the Agreement unambiguously precludes any alleged unilateral third-party assignment of DCS Advisory's rights under the Agreement from being valid. Accordingly, the Court dismisses Snowbridge Securities' claims for breach of contract against ESO Partners and for breach of contract against Soho Square as successor. Furthermore, plaintiffs' request for leave to replead is denied because, despite being granted leave to file a sur-reply after oral argument, plaintiffs did not offer further evidence or argument that would change the Court's analysis.

## III.   Declaratory Judgment

The Court has discretion to entertain a claim for declaratory relief, based on "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).

ESO Partners and Soho Square argue that Count Six -- requesting a declaratory judgment that ESO Partners remains and is obligated under the Agreement to plaintiffs to pay the minimum Placement Fee and other amounts thereunder, and that Soho Square is bound by the Agreement as successor to ESO Partners thereunder and therefore is obligated to plaintiffs to pay the minimum

-22-

Placement Fee and other amounts due thereunder, Compl. ¶ 95 -- is identical to the breach of contract claim against ESO Partners (Count One) and the breach of contract claim against Soho Square as successor (Count Two). ESO Partners and Soho Square argue that as a result, the declaratory judgment claim as against Soho Square should be dismissed in the interests of judicial economy because determination of this claim "would not clarify any uncertainty in the parties' legal relations that would otherwise remain unresolved as part of the breach of contract claim." Optanix, Inc. v. Aloric Inc., No. 20-CV-0966 (GHW), 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (finding that "courts in this Circuit routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action"). Plaintiffs concede that the issues in Count Six overlap with Counts One and Two, and that this "may warrant the Court's exercise of its discretion not to entertain the declaratory judgment claim." ECF No. 44 at 17.

The Court thus grants the motion to dismiss Count Six where the request for a declaratory judgment is duplicative of the breach of contract and breach of contract as successor claims in Count One and Two, and would not serve a useful purpose to clarify or settle the legal issues involved or otherwise finalize the

controversy or offer relief from uncertainty. <u>Duane Reade</u>, 411 F.3d at 389.

## CONCLUSION

For the aforementioned reasons, and as the Court stated by bottom-line order dated March 28, 2022, <u>see</u> ECF No. 61, the Court grants the motions of ESO Partners and Soho Square and dismisses the complaint. The Clerk of Court is directed to enter judgment and close the entries at docket numbers 37 and 39.

SO ORDERED.

Dated:    New York, NY
          April 11, 2022                    _____
                                            JED S. RAKOFF, U.S.D.J.

-24-